# EXHIBIT 1

PageVault

| | |
|---|---|
| Document title: | As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content \| Media Matters for America |
| Capture URL: | https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:10:18 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:10:20 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 7 |
| Capture ID: | ig65Yy1xKX8h28i326suSs |
| Display Name: | achen |




# As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content

*CEO Linda Yaccarino previously claimed that brands are "protected from the risk of being next to" toxic posts*

WRITTEN BY ERIC HANANOKI

PUBLISHED 11/16/23 10:05 AM EST
UPDATED 11/17/23 2:45 PM EST

***Update (11/16/23):*** *IBM released a statement to the Financial Times saying that it has "suspended all advertising on X while we investigate this entirely unacceptable situation." Media Matters will update if the other major companies in this report take any similar actions.*

Update (11/17/23): Axios reported that "Apple is pausing all advertising on X, the Elon Musk-owned social network, sources tell Axios."

As X owner Elon Musk continues his descent into white nationalist and antisemitic conspiracy theories, his social media platform has been placing ads for major brands like Apple, Bravo (NBCUniversal), IBM, Oracle, and Xfinity (Comcast) next to content that touts Adolf Hitler and his Nazi Party. The company's placements come after CEO

Linda Yaccarino claimed that brands are "protected from the risk of being next to" toxic posts on the platform.

Yaccarino has been trying to bring advertisers back to the platform by claiming it's safe for business. She's also claimed that X (formerly Twitter) has been "demonstrating its absolute commitment to combating antisemitism on the platform" and that "antisemitism is evil and X will always work to fight it on our platform."

But her boss last night endorsed the pernicious antisemitic conspiracy theory that Jewish people are supporting "hordes of minorities" who are "flooding" into the country to replace white people. That conspiracy theory was the same one that motivated the deadly 2018 Tree of Life synagogue shooting.

X has also reinstated numerous accounts of bigots and paid far-right extremists, apparently including a pro-Hitler and Holocaust denier account, as part of its creator ad revenue sharing program.

During all of this Musk-induced chaos, corporate advertisements have also been appearing on pro-Hitler, Holocaust denial, white nationalist, pro-violence, and neo-Nazi accounts. Yaccarino has attempted to placate companies by claiming that "brands are now 'protected from the risk of being next to' potentially toxic content."

But that certainly isn't the case for at least five major brands: We recently found ads for Apple, Bravo, Oracle, Xfinity, and IBM next to posts that tout Hitler and his Nazi Party on X. Here they are:






Reinventing the e-bike
business on Mac
xfinity 10G
xfinity
hulu
Get the network
made for streaming
BRAVOCON
watsonx
IBM
HITLER
LEND-LEASE
LOSE LIVES







## THE LATEST

Ben Shapiro claims Abdul El-Sayed, Zohran Mamdani, Hasan Piker, and Cenk Uygur shouldn't be in the country

08/31/26 2:48 PM EDT

Embracing blatant Islamophobia, CBS News makes bizarre attempt to tie El-Sayed to 9/11

08/31/26 2:38 PM EDT

Megyn Kelly calls Michelle Obama a "steaming heap of nastiness"

08/31/26 1:47 PM EDT

Republican C-Span caller says Trump is "oblivious to the situation most Americans are facing right now."

08/28/26 3:25 PM EDT

Cleta Mitchell: "We had three networks that didn't cover the president's speech. I want to know what their relationship is with China."

08/28/26 1:33 PM EDT

1 … →

## IN THIS ARTICLE



# EXHIBIT 2

Page Vault

| | |
|---|---|
| Document title: | X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags \| Media Matters for America |
| Capture URL: | https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:13:50 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:13:52 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 12 |
| Capture ID: | syTbjzR4n9XjYSnHcod5SE |
| Display Name: | achen |



Andrea Austria / Media Matters

# X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags

*IBM recently announced that it suspended advertising on X – will others follow?*

**WRITTEN BY** ERIC HANANOKI

**RESEARCH CONTRIBUTIONS FROM** SHARON KANN

PUBLISHED 11/17/23 12:16 PM EST
UPDATED 11/21/23 2:15 PM EST

> *"Brands are now 'protected from the risk of being next to' potentially toxic content, [X CEO Linda] Yaccarino said. She added that if content is 'lawful but awful' it's difficult to remove it from the platform, but that the company's new content controls would reduce advertiser risk."* (CNBC, 8/10/23)

IBM announced yesterday that it is suspending its advertising on X (formerly Twitter) after Media Matters reported that the platform placed its ads next to content promoting Adolf Hitler and the Nazi Party. IBM isn't alone in having issues when advertising on the platform: Following our report yesterday, we additionally found ads for Amazon, NBA Mexico, NBCUniversal Catalyst, Action Network, and Club for Growth next to white nationalist hashtags like

Club for Growth next to white nationalist hashtags like "KeepEuropeWhite," "white pride," and "WLM" ("White Lives Matter").

X's problem with advertising comes as owner Elon Musk praised the pernicious antisemitic conspiracy theory that Jewish communities are supporting "hordes of minorities" who are "flooding" into the country to replace white people. Musk's endorsement is just the latest example of him embracing rhetoric and conspiracy theories from the far-right fringes.

Aside from his own rhetoric, Musk has opened the floodgates to hateful content by reversing bans on anti-Muslim bigots, white nationalists, and antisemites. His company has also financially rewarded extremists, including apparently paying $3,000 to a pro-Hitler and Holocaust denial account through X's ad revenue sharing program. (Even after criticism, X has not suspended that openly antisemitic account, which has nearly 100,000 followers.)

Advertising buys on X either come from direct buys or through its partnership with ad exchanges like Google Ads. CEO Linda Yaccarino has attempted to stem the advertiser exodus by claiming that brands are "protected from the risk of being next to" toxic posts and repeatedly writing that the platform stands against antisemitism.

But as hateful rhetoric flourishes on X, the platform's remaining advertisers are especially affected. To summarize our past reporting:

- **Pro-Hitler account**. X placed ads for brands including The New York Times Co.'s The Athletic, Major League Baseball, the Atlanta Falcons, Sports Illustrated, USA Today, Amazon, and Office Depot on a verified pro-Hitler account that encourages antisemitic harassment.

- **Holocaust deniers**. X placed ads for brands such as The Wall Street Journal, Nokia, FanDuel, and Thermo Fisher on the accounts of antisemites who have denied the Holocaust.
- **Leading white nationalist group**. X placed ads for Dish, Samsung, and The Wall Street Journal on the verified Twitter account of VDare, a leading white nationalist group.
- **Pro-killing of LGBTQ advocates and politicians**. X placed ads for MLB, Bayer, Tyson Foods, and eBay on the account of Stew Peters, a white nationalist streamer who uses the social platform to endorse the killings of politicians and LGBTQ advocates.
- **Neo-Nazi group**. X placed ads for Honeywell, Discovery, National Women's Soccer League, the Pittsburgh Steelers, USA Today, and Manchester City on the verified account of the National Socialist Network, a leading neo-Nazi group.
- **Pro-Hitler and Holocaust denier account**. X placed ads for major sportsbooks BetMGM, DraftKings, and FanDuel on the verified account that has drawn millions of views for posts that lionize Hitler and deny the Holocaust. The account has also said it's been paid $3,000 this year by X.
- **Antisemitic conspiracy theories about 9/11**. X placed ads for the NFL, MLB, T-Mobile, and eBay alongside content pushing unhinged conspiracy theories about Jewish people orchestrating the 9/11 attacks.

We reported yesterday that X has been placing ads for Apple, Bravo (owned by NBCUniversal), IBM, Oracle, and Xfinity (Comcast) next to content that touts Hitler and his Nazi Party. IBM subsequently released a statement saying that it has "suspended all advertising on X while we investigate this entirely unacceptable situation."

Instead of condemning those pro-Nazi accounts, Musk attacked Media Matters as "an evil organization." He also agreed with a post attacking IBM.

X still has a problem: Since our report yesterday, we found that the company placed ads for Amazon, NBA Mexico, NBCUniversal Catalyst (and here), Action Network (and here, here), and Club for Growth next to the white nationalist hashtags "WLM" (White Lives Matter), "KeepEuropeWhite," "14 Words" (a reference to the leading white nationalist slogan), "white pride," and "WPWW" ("white pride world wide").

NBCUniversal Catalyst is "NBCUniversal's full-service global brand agency" and was advertising for the state-run Saudi Tourism Authority. Club for Growth is a conservative organization; X has been attempting to appeal to political advertisers.

Amazon has been a leading advertiser on X. We previously found that ads for Action Network have appeared on bigoted accounts.

Here are examples of how those ads appeared:



Ad

**Amazon Music** @amazonmusic
Thousands of stations and top playlists, no subscription required.




3 2 22 251K

**varez — e/acc** @neuralvarez · Nov 15
Take the Whitepill,

this is the way...

#WPWW




2 15 289


N ★ C
WHITE LIVES
MATTER
What Are We Doing To
White People?
NBA MEXICO
N ★ C
WHITE LIVES
MATTER
What Are We Doing To
White People?
EUROPE FOR EUROPEANS


N ★ C
WHITE LIVES
MATTER


What Are We Doing To
White People?


BET $10 & GET $40 IN BONUS BETS!
UP TO $200 OVER YOUR FIRST 5 DAYS
CLAIM NOW!


Fanatics
FANCASH BACK ON EVERY BET!
1% ON ALL STRAIGHT BETS
3% ON ALL PARLAYS
5% ON ALL SGPs
SIGN UP NOW!


The trouble is
you think you
have time...


PRESERVE OUR PEOPLE


BET $10 & GET $40 IN BONUS BETS!
UP TO $200 OVER YOUR FIRST 5 DAYS
CLAIM NOW!


Fanatics
FANCASH BACK ON EVERY BET!
1% ON ALL STRAIGHT BETS
3% ON ALL PARLAYS
5% ON ALL SGPs
SIGN UP NOW!






Update (11/21/23): The X user who tweeted the image of Pepe the Frog along with the hashtag "#WPWW" contacted Media Matters to say that they had used the white nationalist hashtag in error due to a typo and said they would not want to spread hate or white nationalism. Whether or not the user intended to tweet a white nationalist hashtag, this was not the only example of the Amazon ad appearing next to hateful content. As the report indicates, the Amazon ad that appeared next to this Pepe the Frog post also appeared alongside a separate one

the Frog post also appeared alongside a separate one declaring that it is "time for Whites to say ENOUGH" along with the hashtags "WPWW" and "WhitePRIDEWorldWide."

## THE LATEST

**Ben Shapiro claims Abdul El-Sayed, Zohran Mamdani, Hasan Piker, and Cenk Uygur shouldn't be in the country**

08/31/26 2:46 PM EDT

**Embracing blatant Islamophobia, CBS News makes bizarre attempt to tie El-Sayed to 9/11**

08/31/26 2:38 PM EDT

**Megyn Kelly calls Michelle Obama a "steaming heap of nastiness"**

08/31/26 1:47 PM EDT

**Republican C-Span caller says Trump is "oblivious to the situation most Americans are facing right now."**

08/28/26 3:25 PM EDT

**Cleta Mitchell: "We had three networks that didn't cover the president's speech. I want to know what their relationship is with China."**

08/28/26 1:33 PM EDT

1 →

## IN THIS ARTICLE



**Twitter / X**

# EXHIBIT 3

Page Vault

| | |
|---|---|
| Document title: | Elon Musk on X: "The split second court opens on Monday, X Corp will be filing a thermonuclear lawsuit against Media Matters and ALL those who colluded in this fraudulent attack on our company" / X |
| Capture URL: | https://x.com/elonmusk/status/1725771191644758037 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:35:32 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:35:33 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | 56vDoFCpBxfc5okWyo2Nty |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk**
@elonmusk

The split second court opens on Monday, X Corp will be filing a thermonuclear lawsuit against Media Matters and ALL those who colluded in this fraudulent attack on our company

# Stand with X to protect free speech

This week *Media Matters for America* posted a story that completely misrepresented the real user experience on X, in another attempt to undermine freedom of speech and mislead advertisers.

Above everything, including profit, X works to protect the public's right to free speech. But for speech to be truly free, we must also have the freedom to see or hear things that some people may consider objectionable. We believe that everyone has the right to make up their own minds about what to read, watch, or listen to – because that's the power of freedom of speech.

Despite our clear and consistent position, X has seen a number of attacks from activist groups like *Media Matters* and legacy media outlets who seek to undermine freedom of expression on our platform because they perceive it as a threat to their ideological narrative and those of their financial supporters. These groups try to use their influence to attack our revenue streams by deceiving advertisers on X.

**Here are the facts on *Media Matters'* research:**

- To manipulate the public and advertisers, *Media Matters* created an alternate account and curated the posts and advertising appearing on the account's timeline to misinform advertisers about the placement of their posts. These contrived experiences could be applied to any platform.
- Once they curated their feed, they repeatedly refreshed their timelines to find a rare instance of ads serving next to the content they chose to follow. Our logs indicate that they forced a scenario resulting in 13 times the number of ads served compared to the median ads served to an X user.
- **Of the 5.5 billion ad impressions on X that day, less than 50 total ad impressions were served** against all of the organic content featured in the *Media Matters* article.
  - For one brand showcased in the article, one of its ads ran adjacent to a post 2 times and that ad was seen in that setting by only two users, one of which was the author of the *Media Matters* article.
  - For another brand showcased in the article, two of its ads served adjacent to 2 posts, 3 times, **and that ad was only seen in that setting by one user, the author of the *Media Matters* article.**
- *Media Matters'* article also highlights nine posts they believe should not be allowed on X. Upon evaluation, only one of the nine organic posts featured in the article violated our content policies, and we've taken action on it under our Freedom of Speech, Not Reach enforcement approach.

**Here's a summary on this all:**

1. **X will protect the public's right to free expression.** We will not allow agenda-driven activists, or even our own profits, to deter our vision.
2. **Everyone has a choice on X.** User and brand control on X is superior to a year ago.
3. **Data wins over allegations.** *Media Matters* does not reflect the user experience on X.

As we've seen in some parts of the world, when free expression is taken away, it is very dangerous and hard to get back – that's why the people who came before us fought so hard to protect. Without freedom of speech we lose the checks and balances critical to a thriving democracy. We must defend our individual rights as if our lives, and flourishing society, depend on it.

If you're really in on protecting free speech, then we all need to protect it completely.

**Stand with X to protect free speech.**

7:01 AM · Nov 18, 2023 · **58.7M** Views

29K 58K 338K 9.3K

Elon Musk

**See all the replies**

**Continue to X**

← **Post** Log in Sign up

perceive it as a threat to their ideological narrative and those of their financial supporters. These groups try to use their influence to attack our revenue streams by deceiving advertisers on X.

**Here are the facts on *Media Matters'* research:**

- To manipulate the public and advertisers, *Media Matters* created an alternate account and curated the posts and advertising appearing on the account's timeline to misinform advertisers about the placement of their posts. These contrived experiences could be applied to any platform.
- Once they curated their feed, they repeatedly refreshed their timelines to find a rare instance of ads serving next to the content they chose to follow. Our logs indicate that they forced a scenario resulting in **13 times** the number of ads served compared to the median ads served to an X user.
- Of the **5.5 billion ad impressions** on X that day, **less than 50 total ad impressions** were served against all of the organic content featured in the *Media Matters* article.
  - For one brand showcased in the article, one of its ads ran adjacent to a post 2 times and that ad was seen in that setting by only two users, one of which was the author of the *Media Matters* article.
  - For another brand showcased in the article, two of its ads served adjacent to 2 posts, 3 times, **and that ad was only seen in that setting by one user, the author of the *Media Matters* article.**
- *Media Matters'* article also highlights nine posts they believe should not be allowed on X. Upon evaluation, only one of the nine organic posts featured in the article violated our content policies, and we've taken action on it under our Freedom of Speech, Not Reach enforcement approach.

**Here's a summary on this all:**

1. **X will protect the public's right to free expression.** We will not allow agenda-driven activists, or even our own profits, to deter our vision.
2. **Everyone has a choice on X.** User and brand control on X is superior to a year ago.
3. **Data wins over allegations.** *Media Matters* does not reflect the user experience on X.

As we've seen in some parts of the world, when free expression is taken away, it is very dangerous and hard to get back – that's why the people who came before us fought so hard to protect. Without freedom of speech we lose the checks and balances critical to a thriving democracy. We must defend our individual rights as if our lives, and flourishing society, depend on it.

If you're really in on protecting free speech, then we all need to protect it completely.

**Stand with X to protect free speech.**

7:01 AM · Nov 18, 2023 · **58.7M** Views

29K 68K 338K 9.3K

**Elon Musk** @elonmusk · Nov 18, 2023 ···

Their board, their donors, their network of dark money, all of them ...

4K 10K 92K 5.1M

**ALX** 🇺🇸 @alx · Nov 18, 2023 ···

Thank you. This is an important fight 💪

131 308 11K 578K

## See all the replies

Continue to X

# EXHIBIT 4

Page Vault

| | |
|---|---|
| Document title: | Elon Musk on X: "Their board, their donors, their network of dark money, all of them ..." / X |
| Capture URL: | https://x.com/elonmusk/status/1725771944467759573 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:37:48 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:37:50 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 4 |
| Capture ID: | frHonRCeQ7AeuvtURYpEbE |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk** @elonmusk · Nov 18, 2023 ···

The split second court opens on Monday, X Corp will be filing a thermonuclear lawsuit against Media Matters and ALL those who colluded in this fraudulent attack on our company

## Stand with X to protect free speech

This week *Media Matters for America* posted a story that completely misrepresented the real user experience on X, in another attempt to undermine freedom of speech and mislead advertisers.

Above everything, including profit, X works to protect the public's right to free speech. But for speech to be truly free, we must also have the freedom to see or hear things that some people may consider objectionable. We believe that everyone has the right to make up their own minds about what to read, watch, or listen to – because that is the power of freedom of speech.

Despite our clear and consistent position, X has seen a number of attacks from activist groups like *Media Matters* and legacy media outlets who seek to undermine freedom of expression on our platform because they perceive it as a threat to their ideological narrative and those of their financial supporters. These groups try to use their influence to attack our revenue streams by deceiving advertisers on X.

**Here are the facts on *Media Matters'* research:**

- To manipulate the public and advertisers, *Media Matters* created an alternate account and curated the posts and advertising appearing on the account's timeline to misinform advertisers about the placement of their posts. These contrived experiences could be applied to any platform.
- Once they curated their feed, they repeatedly refreshed their timelines to find a rare instance of ads serving next to the content they chose to follow. Our logs indicate that they forced a scenario resulting in 13 times the number of ads served compared to the median ads served to an X user.
- Of the 5.5 billion ad impressions on X that day, less than 50 total ad impressions were served against all of the organic content featured in the *Media Matters* article.
    - For one brand showcased in the article, one of its ads ran adjacent to a post 2 times and that ad was seen in that setting by only two users, one of which was the author of the *Media Matters* article.
    - For another brand showcased in the article, two of its ads served adjacent to 2 posts, 3 times, and that ad was only seen in that setting by one user, the author of the *Media Matters* article.
- *Media Matters'* article also highlights nine posts they believe should not be allowed on X. Upon evaluation, only one of the nine organic posts featured in the article violated our content policies, and we've taken action on it under our Freedom of Speech, Not Reach enforcement approach.

**Here's a summary on this all:**

1. **X will protect the public's right to free expression.** We will not allow agenda-driven activists, or even our own profits, to deter our vision.
2. **Everyone has a choice on X.** User and brand control on X is superior to a year ago.
3. **Data wins over allegations.** *Media Matters* does not reflect the user experience on X.

As we've seen in some parts of the world, when free expression is taken away, it is very dangerous and hard to get back – that's why the people who came before us fought so hard to protect. Without freedom of speech we lose the checks and balances critical to a thriving democracy. We must defend our individual rights as if our lives, and flourishing society, depend on it.

If you're really in on protecting free speech, then we all need to protect it completely.

**Stand with X to protect free speech.**

29K 68K 338K 59M

**Elon Musk** ···
@elonmusk

Their board, their donors, their network of dark money, all of them ...

7:04 AM · Nov 18, 2023 · **5.1M** Views

## See all the replies

Continue to X

← **Post** Log in Sign up

and to make the guilty innocent, and that's power. Because they control the minds of the masses."

~ Malcolm X



110 568 2.8K 252K

**Robby Starbuck** @robbyst... · Nov 18, 2023 ···
🔥🔥🔥

Soros needs this treatment too. The man and the people he empowers want to destroy humanity as we know it and in doing so, seek to amplify the worst parts of humanity.

84 245 2.7K 123K

**Chief Nerd** @TheChief... · Nov 18, 2023 ···
"Network of Dark Money"

Media Matters has a policy of not comprehensively listing donors. In 2010, six years after the Democracy Alliance initially endorsed MMfA, financier George Soros — a founding and continuing member of the Alliance — announced that he was donating $1 million

**See all the replies**

**Continue to X**

← **Post** Log in Sign up

🔥🔥🔥

Soros needs this treatment too. The man and the people he empowers want to destroy humanity as we know it and in doing so, seek to amplify the worst parts of humanity.

84 245 2.7K 123K

**Chief Nerd** @TheChief... · Nov 18, 2023 ···

"Network of Dark Money" 👇

Media Matters has a policy of not comprehensively listing donors. In 2010, six years after the Democracy Alliance initially endorsed MMfA, financier George Soros — a founding and continuing member of the Alliance — announced that he was donating $1 million to MMfA. Soros said his concern over "recent evidence suggesting that the incendiary rhetoric of Fox News hosts may incite violence" had moved him to donate to MMfA.[22][23] During a 2014 CNN interview, David Brock stated that Soros' contributions were "less than 10 percent" of Media Matters' budget.[24] According to *Politico*, Brock's assertion was misleading: "Media Matters, however has received funding from or formed partnerships with several groups that Soros funds or has funded. These include the Tides Foundation, Democracy Alliance, Moveon.org and the Center for American Progress."[25]

59 365 1.9K 109K

## See all the replies

Continue to X

# EXHIBIT 5

Page Vault

| | |
|---|---|
| Document title: | Elon Musk on X: "@stevenmarkryan The discovery and depositions will be glorious to behold" / X |
| Capture URL: | https://x.com/elonmusk/status/1725776174918283678 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:40:09 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:40:10 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | vkAbtgYhS6FuoZ7VtrqdtS |
| Display Name: | achen |

← **Post** Log in Sign up

**stevenmarkryan** @steven... · Nov 18, 2023 ···

Imagine being so dim & blinded by your desire to deceive that you perpetrate brazen fraud to mislead the public and are SO daft that it doesn't occur to you that you are committing fraud on a TECH PLATFORM which logs data/activity (aka LOGS THE TRUTH) which disproved your lies. Show more

46 124 1.7K 121K

**Elon Musk**
@elonmusk ···

The discovery and depositions will be glorious to behold

7:21 AM · Nov 18, 2023 · **191.5K** Views

189 387 3.9K 55

**stevenmarkryan** @steven... · Nov 18, 2023 ···



**See all the replies**

Continue to X

← **Post** Log in Sign up




6 11 520 24K

**MAGA Voice** @MAGAVoice · Nov 18, 2023
When can I convert my earnings from 𝕏 into stock

Everything that's happening makes me want to support 𝕏 even more

Thank you Elon for doing what's right not just for America but for humanity. We stand with you

1 6 94 4.4K

**Staida** @Staida · Nov 18, 2023
I'm so glad to hear you come out swinging

1 2 44 2.9K

## See all the replies

Continue to X

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

**X CORP.**, a Nevada corporation,
Plaintiff,

vs.

**MEDIA MATTERS FOR AMERICA**, a Washington, D.C. non-profit corporation, **ERIC HANANOKI**, and **ANGELO CARUSONE**,
Defendants.

Case No. 4:23-cv-01175-O

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

1. Since Elon Musk acquired Plaintiff X Corp., the company has taken extensive steps to reduce legacy censorship on the X platform while maintaining important safety protocols to preserve and grow advertiser relationships. One immediate and broadly recognized consequence is that X is now the most significant online platform that permits users to share their views without aggressive censorship measures implemented to provide a partisan or ideological advantage to one faction or another.

2. These changes have prompted an extended, ideologically driven crusade against X by Defendants Media Matters for America ("Media Matters"), its President, Angelo Carusone, and its reporters, including, as relevant here, Eric Hananoki. Media Matters describes itself as "a progressive research and information center dedicated to comprehensively monitoring, analyzing, and correcting conservative misinformation in the U.S. media."[1] Since its launch in 2004, Media

[1] About Us, MEDIA MATTERS FOR AMERICA (2023), https://www.mediamatters.org/about-us.

Matters has engaged in an all-out campaign of "guerilla warfare and sabotage" on conservative news sources.[2] In this context, X Corp. is a critical target for Media Matters: having opened the X platform to conservative and liberal speech alike, X Corp. has weakened Media Matters' ability to censor its ideological enemies.

3. Defendants have not taken the rejection of their preferred censorship regime lightly. Media Matters is well aware of the importance of advertising revenue to X Corp.—paid advertising being the overwhelming source of X Corp.'s revenue—and is likewise aware that X Corp. obtains that revenue through contracts with many prominent businesses to advertise on the X platform. In just the last year, Media Matters has published a series of articles designed to threaten X Corp.'s relationships with massive multinational advertisers and global publishers, including Amazon, eBay, Major League Baseball, New York Times Co., Samsung, Sports Illustrated, The Wall Street Journal, USA Today, Office Depot, Nokia, Dish, Bayer, Tyson Foods, Honeywell, Discovery, FanDuel, Thermo Fisher, National Women's Soccer League, the Pittsburgh Steelers, the Atlanta Falcons, Manchester City, DraftKings, FanDuel, T-Mobile, and The Athletic.[3]

4. Last November alone, Media Matters released over twenty articles disparaging X Corp.—a blatant smear campaign. And these articles are only the latest salvo. Since the first news of Musk's interest in the company, Media Matters has falsely portrayed Twitter, now X, as a risky, unsafe platform for advertisers. Contrary to Media Matters' malicious and fabricated narrative,

---

[2] Ben Smith, *Media Matters' war against Fox*, POLITICO (Mar. 26, 2011 7:23 AM), https://www.politico.com/story/2011/03/media-matters-war-against-fox-051949.

[3] *See, e.g.*, Eric Hananoki, *X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags*, MEDIA MATTERS FOR AMERICA (Nov. 17, 2023, 12:16 PM), https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist.

99% of X's measured ad placement in 2023 appeared adjacent to content scoring above the Global Alliance for Responsible Media's brand safety floor.

5. Defendants have therefore undertaken a smear campaign constituting business disparagement and tortious interference with X Corp.'s business relationships in an attempt to force X Corp. to impose left-wing censorship policies on the X platform.

6. This campaign has consisted of the long-term and repeated attempts to destroy X Corp.'s relationships with its advertising base through false and malicious claims about the platform. Indeed, Media Matters publicly represents that "[n]o advertiser is safe while Elon Musk controls X."[4]

7. Defendants' attempts to destroy the relationships that X Corp. has built with its advertisers have been anything but subtle. Last November, looking to portray X's social networking platform as being dominated by "white nationalist and anti-Semitic conspiracy theories," Media Matters knowingly and maliciously manufactured side-by-side images depicting advertisers' posts on X Corp.'s social media platform beside Neo-Nazi and white-nationalist fringe content and then portrayed these manufactured images as if they were what typical X users experience on the platform. Media Matters designed both these images and its resulting media strategy to drive advertisers from the platform and destroy X Corp.

8. These images and the resulting November 2023 articles were a deception campaign: Media Matters created utterly extraordinary and manufactured circumstances that no organic user would undertake, deliberately misused the X platform to induce the algorithm to pair racist content with popular advertisers' brands, and then passed off the results as typical of an X user's

[4] Matt Gertz, *It's the Antisemitism, Stupid*, MEDIA MATTERS FOR AMERICA (Nov. 17, 2023, 11:00 AM), https://www.mediamatters.org/elon-musk/its-antisemitism-stupid.

experience. This manipulation was designed to create, and did create, the false impression that these pairings are anything but what they actually are: manufactured, inorganic, and extraordinarily rare. It likewise harmed X Corp.'s business relationships and advertising contracts with numerous companies, as Media Matters itself gloated: IBM, Apple, Lionsgate Entertainment, Sony, and more.[5]

9. Media Matters executed this plot in multiple steps, as X's internal investigations have revealed. First, Media Matters accessed accounts that had been active for at least 30 days, bypassing X's ad filter for new users. Media Matters then exclusively followed a small subset of users consisting *entirely* of accounts in one of two categories: those known to produce extreme, fringe content, and accounts owned by X's big-name advertisers. The end result was a feed precision-designed by Media Matters for a single purpose: to produce side-by-side ad/content pairings that it could screenshot in an effort to alienate advertisers.

10. But this activity *still* was not enough to create the pairings of advertisements and content that Media Matters aimed to produce.

11. Media Matters therefore resorted to endlessly scrolling and refreshing its unrepresentative, hand-selected feed, ***generating between 13 and 15 times more advertisements per hour than viewed by the average X user***, and repeating this inauthentic activity until it finally received pages containing the result it wanted: fringe content next to X's largest advertisers' paid posts.

12. Media Matters omitted mentioning any of this in a report published on November 16, 2023, that displayed instances Media Matters "found" on X of advertisers' paid posts featured

---

[5] Media Matters Staff, *Here Are the Companies Pulling Ads from X*, MEDIA MATTERS FOR AMERICA (Nov. 17, 2023, 4:45 PM), https://www.mediamatters.org/twitter/here-are-companies-pulling-ads-x.

next to Neo-Nazi and white-nationalist content. Nor did Media Matters otherwise provide any context regarding the forced, inauthentic nature and extraordinary rarity of these pairings.

13. Indeed, Media Matters insisted that their manipulated and false article was authentic. As Defendant Angelo Carusone claimed in an interview on MSNBC on November 26, 2023: "You know, we didn't place the ads. We didn't, you know, photoshop in the pictures of the ads. What we did was use Twitter ***the way a normal user would*** and then log the advertisements that were received. And that's the issue—no matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been." (emphasis added). Media Matters continues to publish this false statement on its website today.[6]

14. Relying on the false and malicious narrative propagated by Media Matters, the advertisers targeted took these pairings to be anything *but* rare and inorganic, with all but one of the companies featured in the Media Matters piece withdrawing all ads from X, including Apple, Comcast, NBCUniversal, and IBM—some of X's largest advertisers. Indeed, in pulling all advertising from X in response to this intentionally deceptive report, IBM called the pairings an "entirely unacceptable situation."[7] Only Oracle did not withdraw its ads.

15. The truth bears no resemblance to Media Matters' narrative. In fact, IBM's, Comcast's, and Oracle's paid posts appeared alongside the fringe content cited by Media Matters for ***only one*** viewer (out of more than 500 million) on all of X: ***Media Matters***. Not a single authentic user of the X platform saw IBM's, Comcast's, or Oracle's ads next to that content, which

---

[6] *Angelo Carusone discusses Elon Musk and X on MSNBC*, Media Matters (Nov. 26, 2023), https://www.mediamatters.org/angelo-carusone/angelo-carusone-discusses-elon-musk-and-x-msnbc-no-matter-how-you-slice-it-fact.

[7] Hannah Murphy, *IBM pulls adverts from X after report finding they ran next to Nazi Content*, FINANCIAL TIMES (Nov. 16, 2023), https://www.ft.com/content/647b4c4d-f4d5-46cd-bc26-8c943b6995e7.l.

Media Matters achieved only through its manipulation of X's algorithms as described above. And in Apple's case, only two out of more than 500 million active users saw its ad appear alongside the fringe content cited in the article—at least one of which was Media Matters.

16. Media Matters could have produced a fair, accurate account of users' interactions with advertisements on X via basic reporting: following *real users*, documenting the *actual, organic* production of content and advertisement pairings. Had it done so, however, it would not have produced the outcome Media Matters so desperately desired, which was to tarnish X's reputation by associating it with racist content. So instead, Media Matters chose to maliciously misrepresent the X experience with the intention of harming X and its business.

17. Unsatisfied with the initial financial consequences of Media Matters' blatantly false reporting, Media Matters President Angelo Carusone appeared on broadcast television to personally repeat and reiterate the false and malicious coverage that Media Matters had falsely and maliciously manufactured. As Carusone put it: "Why does it seem like there's so much more Nazi content, why does it seem like that platform is getting more extreme, why does it seem like the tools they are promising us, the brand safety tools are not working the way they should. It's because when you look at it through the lens of the key decision-maker there Elon Musk, he doesn't really see a problem or at least seemingly, with a lot of this content because it's also a reflection of his own worldview."[8]

---

[8] Media Matters Staff, *On MSNBC, Angelo Carusone Explains Why Elon Musk's Own Behavior Will Keep Advertisers Away from X*, MEDIA MATTERS FOR AMERICA (Nov. 25, 2023, 8:01 PM), https://www.mediamatters.org/angelo-carusone/msnbc-angelo-carusone-explains-why-elon-musks-own-behavior-will-scare-advertisers.

## PARTIES

18. Plaintiff X Corp. is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in San Francisco, California. Plaintiff conducts significant business in Texas, including maintaining significant offices in Texas. X Corp. operates the social media platform, "X" (formerly "Twitter"), an internet-based service that enables users to create and share their own content, interact with other users, and curate feeds of content.

19. Defendant Media Matters is a web-based publisher incorporated under the laws of the District of Columbia with its principal place of business at 800 Maine Avenue SW, Suite 400, Washington, D.C. 20024. The organization's purpose is "to systematically monitor" conservative media and publish reports based on this purported reporting.

20. Defendant Angelo Carusone is the President of Media Matters and is domiciled in New York.

21. Defendant Eric Hananoki is a writer for Defendant Media Matters and is domiciled in Maryland.

## JURISDICTION & VENUE

22. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

23. This Court has personal jurisdiction over all Defendants. Upon information and belief, Media Matters routinely contacts numerous Texans to invite them to subscribe to Media Matters' content. In particular, the November 22, 2023, Media Matters newsletter that contains the false, malicious, and disparaging statements at the heart of this case, was, on information and belief, emailed to hundreds or thousands of Texans, including numerous individuals living in the

Northern District of Texas. Media Matters likewise seeks donations from individuals in Texas in order to fund its campaign against X Corp. These actions indicate that defendants purposefully avail themselves of Texas in seeking to advertise to and fundraise from Texan audiences specifically based on the false, malicious, and disparaging statements at issue here.

24. Media Matters, its officers, reporters, agents, or employees, including, on information and belief, Eric Hananoki or Angelo Carusone, contacted advertisers headquartered in Texas in order to communicate the false and malicious assertions contained in their November article and in earlier Media Matters coverage of X Corp. These communications represent a purposeful availment of Texas because they were willful and knowing efforts to influence businesses headquartered or incorporated in Texas, including Oracle and AT&T, to discontinue ongoing contractual relationships entered into in Texas, by decision-makers in Texas, with X Corp.

25. Upon information and belief, defendants' campaign to destroy X Corp. by discouraging advertisers from using the X platform caused at least several businesses located in, headquartered in, or with a substantial presence in Texas (including in the Northern District) to re-examine, reduce, or suspend their advertising relationships with X Corp. These effects were calculated and deliberate and further underscore the propriety of this Court's exercise of personal jurisdiction over all defendants.

26. It is common journalistic practice to contact the subjects of an article. Indeed, Eric Hananoki has previously noted that he or Media Matters sought comments from one or more subjects of previous stories, implying that he and Media Matters at least follow this practice when it advances their agenda.[9] It is implausible that neither Hananoki, Carusone, nor Media Matters

---

[9] Eric Hananoki, *A QAnon Grifter Was Selling Colloidal Silver as a Supposed Coronavirus Treatment and Cure*, MEDIA MATTERS FOR AMERICA (April 8, 2020, 2:36 PM),

contacted potential or actual sources or subjects of their stories regarding their coverage of X Corp. while those sources or subjects were located in Texas. This, too, constitutes purposeful availment of Texas sufficient to establish personal jurisdiction over all defendants.

27. Defendants' targeting of Elon Musk individually likewise supports the exercise of personal jurisdiction by this Court. Musk has been a resident of Texas throughout the relevant period of defendants' misinformation campaign; many of Musk's decisions regarding X Corp. took place while Musk was physically within Texas; many of Musk's personal and professional relationships are with other individuals also in Texas. Texas is plainly a geographic center of the effects of defendants' attempts to disparage and injure X Corp. And as the owner of Plaintiff X Corp., Defendants' smears against Musk both necessarily harm and were designed to harm X Corp. itself.

28. This Court may likewise exercise personal jurisdiction over all defendants because defendants' malicious and wrongful conduct was designed to damage relationships with both advertisers in Texas and tens of thousands of Texas users, including thousands of users in this district alone.

29. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in the Northern District of Texas. Aside from Media Matters' false, malicious, and disparaging content being accessible throughout the Northern District of Texas on its website, Media Matters affirmatively transmitted that content into the Northern District of Texas through thousands of copies of its November 22, 2023, newsletter, which repeated and linked to the disparaging statements at issue in this litigation. Furthermore, on

https://www.mediamatters.org/coronavirus-covid-19/qanon-grifter-dustin-nemos-was-selling-colloidal-silver-supposed-coronavirus

information and belief, Defendants or their officers, employees, or agents reached out to businesses headquartered in this district or with significant property in this district—for example, AT&T Corp.—to draw those businesses' attention to defendants' false, malicious, and disparaging statements in order to destroy X Corp.'s relationships with those businesses. Likewise, thousands of X users are located within the Northern District of Texas.

## GENERAL ALLEGATIONS

### I. Media Matters Targets X Corp. Because of the Changes to Its Policies.

30. Under previous management, then-Twitter engaged in extensive ideological censorship designed to broadly promote left-wing views and speakers while marginalizing right-wing views and speakers. Defendants expected that Elon Musk would end that censorship and opposed Musk's acquisition of Twitter from the start. As Carusone ranted on one MSNBC segment prior to the consummation of Musk's acquisition of Twitter, when "Elon . . . says free speech, what he really means is free for all. That's all you need to know about what Twitter will look like. So the cesspool that everyone sort of recognized that Twitter kind of can be sometimes and the reactionary aspects to it, that cesspool is going to flood over . . . [and] it's actually going to have an effect on the entire information landscape."[10]

31. Indeed, when it appeared that Musk would not purchase then-Twitter, Carusone was ecstatic. Media Matters issued a press release containing Carusone's declaration that "If Musk was to acquire Twitter . . . Twitter would become a supercharged engine of radicalization." Per Carusone, Musk was a "madman" that "significantly harmed [Twitter's] shareholder value" by

---

[10] Media Matters Staff, *On MSNBC, Angelo Carusone: Fox News Supports Elon Musk Buying Twitter Because His Vision for Twitter "Empowers Their Lies and It Enables Their Politics,"* MEDIA MATTERS FOR AMERICA (Apr. 29, 2022, 8:17 PM), https://www.mediamatters.org/msnbc/angelo-carusone-fox-news-supports-elon-musk-buying-twitter-because-his-vision-twitter.

mere association. Ultimately, Carusone projected that it was advertisers who scuttled the deal: "Advertisers took notice, largely as the result of pressure from activists and community leaders, and made it clear they would not pay for Musk's ideological fantasy."[11]

32. A few days before Musk's acquisition of then-Twitter Inc., Media Matters unapologetically began lobbying then-Twitter's sponsors "to pull their support" from the platform "if Musk's acquisition results in a new deluge of unmoderated right-wing hatred and misinformation." And the sort of support Media Matters expected advertisers to pull was clear: Media Matters acknowledged "that ads reportedly accounted for 90% of Twitter's revenue," and concluded "it is clear that the power to hold Musk accountable if he rolls back the platform's protections against harassment, abuse, and disinformation"—Media Matters' euphemistic way of describing then-Twitter's ideologically driven censorship—"lies in the hands of Twitter's top advertisers." That article identified what Media Matters believed to be then-Twitter's top 20 advertisers, which Media Matters believed had paid Twitter "an estimated $358 million combined" across most of 2022. Media Matters' list included Home Box Office Inc., Amazon, IBM, Apple, Coca-Cola, Comcast, Meta, and Google, among others.[12]

33. Musk acquired Twitter Inc. nonetheless. Mere hours after consummating the acquisition, Media Matters organized an open "coalition letter" to contact what it believed were the platform's 20 largest advertisers. That letter "call[ed] on [the companies] to notify Musk and

---

[11] Media Matters Staff, *Angelo Carusone: Elon Musk's Twitter deal is collapsing because of Musk's own erratic behavior, embrace of extremists, and bad business decisions*, MEDIA MATTERS FOR AMERICA (Jul. 8, 2022, 6:58 PM), https://www.mediamatters.org/twitter/angelo-carusone-elon-musks-twitter-deal-collapsing-because-musks-own-erratic-behavior.

[12] Alex Paterson & Natalie Mathes, *These Top Advertisers Can Stop Musk's Twitter From Supercharging Online Radicalization*, MEDIA MATTERS FOR AMERICA (Oct. 27, 2022, 5:43 PM), https://www.mediamatters.org/twitter/these-top-advertisers-can-stop-musks-twitter-supercharging-online-radicalization.

publicly commit that [they] will cease all advertising on Twitter globally if he follows through on his plans to undermine brand safety and community standards including gutting content moderation." This letter proved one of the earliest examples of Media Matters' dishonest and calculated equation of a reduction in censorship on the platform with a concern for "brand safety."

34. Carusone made Media Matters' strategy plain: pressure advertisers into leaving the platform if Twitter, now X, did not capitulate to Media Matters' censorship demands. As Carusone put it contemporaneously with Musk's acquiring Twitter, "Twitter is different. They really just need blue-chip advertisers. And because they really need blue-chip advertisers, there's a very small set of them that actually have disproportionate influence. I don't think they need to run away right now, although I would be happy if they wanted to send a message. But the easiest message they can send is to call and say, here's our red lines. What are you doing about brand safety and community safeguards? And if you're planning on rolling them back, we're walking."[13]

35. Carusone's repeated statements announcing his campaign indicated his and Media Matters' understanding of the value of X Corp.'s important advertising contracts with major companies, how interference with those contracts and the underlying business relationships giving rise to those contracts could inflict serious harm on X Corp., and that Media Matters and Carusone had every intention of harming X Corp., the platform, those contracts, and those business relationships if X Corp. did not maintain Media Matters' preferred censorship regime.

---

[13] Media Matters Staff, *On MSNBC, Angelo Carusone Explains Why Twitter and Elon Musk Need to Listen to Blue-Chip Advertisers*, MEDIA MATTERS FOR AMERICA (Oct. 30, 2022, 7:41 PM), https://www.mediamatters.org/angelo-carusone/msnbc-angelo-carusone-explains-why-twitter-and-elon-musk-need-listen-blue-chip.

36. After Musk acquired then-Twitter Inc., now X Corp., the company terminated many of the individuals responsible for this censorship regime and ended many of the policies responsible for its ongoing implementation on the platform.

37. Media Matters' and Carusone's statements regarding the X platform became increasingly vitriolic and malicious. For example, Carusone used a discussion regarding media personality Tucker Carlson's move to the X platform to slur Carlson and disparage X. Carusone described Carlson as "an evangelizer of white supremacy. Probably the biggest advocate. . . . So I actually think Twitter is going to become a much meaner, nastier, racist place because, for sure, as we've already seen the way the algorithm is playing out, it's not like you know Elon Musk is going to be a passive participant here. He's going to have his thumb on the scale to make sure that Tucker's reach is getting prioritized and amplified, probably to the same degree that his own does."[14]

38. These knowingly false and actually malicious statements harmed X Corp.'s reputation and business relationships: several long-term advertisers decreased their advertising spending on the platform, while others suspended or terminated their relationships with the platform altogether.

## II. X is a Safe Platform for Users and Advertisers, Despite Media Matters' Deceptions.

39. Defendants' campaign did not initially yield the full scope of economic harms they sought because X Corp.'s platform is, at bottom, a safe place for users and advertisers to communicate.

---

[14] Media Matters Staff, *On MSNBC, Angelo Carusone Explains Why Tucker Carlson's Power "Will Be Greatly Diminished" If He Takes His Show to Twitter*, MEDIA MATTERS FOR AMERICA (Oct. 30, 2022, 7:41 PM), https://www.mediamatters.org/angelo-carusone/angelo-carusone-explains-why-tucker-carlsons-power-will-be-greatly-diminshed-if-he.

40. X Corp. operates the X social media platform with over 500 million active monthly users. X facilitates free expression and open discourse by enabling its users to create and share their own content and to message and comment on other users' posts. These posts appear sequentially to users in "feeds," which occasionally include paid advertisements—the overwhelming source of X Corp.'s revenue.

41. Users shape their own experiences on X. Users curate the content on their own feeds by choosing to "follow" other users, thereby determining which posts are presented to them. Most users are served a variety of content based on an algorithm that takes account of who that user follows and what that user engages with. But X also provides its users the option to forgo algorithmically suggested posts altogether, thereby enabling a user to view only the content that user chooses to view.

42. X is a social media platform that remains in operation due to its loyal users and advertisers. X Corp. invests heavily in technologies that work in tandem to facilitate safe and effective interactions between users and advertisers—technologies that operate seamlessly under normal, organic conditions.

43. As a first layer of protection for advertisers, X applies default protections to all posts. These protections are designed to prevent advertisements from being placed next to content that violates community guidelines. When users operate within X's community guidelines, these default mechanisms are effective and have a long history of successfully protecting X's advertisers from undesirable interactions with fringe content.

44. As a second layer of protection, X provides advertisers with opt-in options. These options allow advertisers to further address any specific concerns they may have about their

advertisements being seen next to specific content. Here, advertisers can specify which key words and user handles they *do not* want their posts to appear by.

45. These protections and others create a safe environment for advertisers that allow them to reach their target audiences while protecting their brands, as Media Matters well knows.

**III. Media Matters Systematically Manipulated the X User Experience to Disparage X.**

46. Because its campaign of disparaging X Corp. as well as pressuring advertisers had not forced X Corp. to capitulate to Media Matters' demands, on November 16, 2023, Media Matters and Eric Hananoki published a false, disparaging, and misleading article with the headline, "*X has been placing ads* for Apple, Bravo, IBM, Oracle, and Xfinity[15] next to pro-Nazi content," claiming that X Corp. was responsible for anti-Semitic content being paired with X's advertisers' paid posts.[16] This statement was not true, and both Media Matters and Hananoki knew it. As explained below and displayed in an X internal review, this title is false in that Media Matters itself—not X—was responsible for placement of the content it identified through its willful exploitation of X's user features—a result it *specifically intended* to bring about. X in fact has many default safeguards that *prevent* the platform from displaying content in the manner achieved by Defendants.

47. Further, in the body of the piece, Media Matters falsely claimed that it "recently *found* ads for Apple, Bravo, Oracle, Xfinity, and IBM next to posts that tout Hitler and his Nazi

[15] Xfinity is a Comcast service.

[16] *See* Eric Hananoki, *As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content*, MEDIA MATTERS FOR AMERICA, (Nov. 16, 2023, 10:05AM), https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle.

Party on X."[17] Based on this false claim, Media Matters falsely stated that it "certainly isn't the case" that "brands are now 'protected from the risk of being next to' potentially toxic content."[18] Media Matters intentionally and maliciously made these false statements to poison advertiser relationships: the piece expressly states that X leadership had "been trying to bring advertisers back to the platform by claiming it's safe for business."[19]

48. In reality, Media Matters did not *find* pairings that X passively allowed on the platform. Media Matters *created* these pairings in secrecy to manufacture the harmful perception that X is at best an incompetent content moderator (a harmful accusation for any social media platform), or that X Corp. encourages Nazi and racist posts.

49. On X, users can control the content on their feeds. When users show interest in particular topics, ads will generate that relate to those topics. Media Matters exploited these features by creating a secret X account precision-designed to evade normal safeguards, manipulating every aspect of the system through which posts and advertisements appear, ultimately creating the side-by-side images of objectionable content and advertisements.

50. X's internal user data tells the story of just how far Media Matters went to manufacture an inorganic user experience strictly aimed at creating an interaction between controversial content and big-name advertisers that was seen only by the Media Matters account and then published broadly.

51. First, Media Matters set out on their attempt to evade X's content filters for new users by specifically using an account that had been in existence for more than thirty days.

---

[17] *See id.* (emphasis added).

[18] *See id.*

[19] *See id.*

52. Next, Media Matters set its account to follow only 30 users (far less than the average number of accounts followed by a typical active user, 219), severely limiting the amount and type of content featured on its feed. *All* of these users were either already known for posting controversial content or were accounts for X's advertisers. That is, *100% of the accounts* Media Matters followed were either fringe accounts or were accounts for national large brands. In all, this functioned as an attempt to flood the Media Matters account with content only from national brands and fringe figures, tricking the algorithm into thinking Media Matters *wanted* to view both hateful content and content from large advertisers.

53. Even this did not produce Media Matters' intended result. An internal review by X revealed that Media Matters' account started to alter its scrolling and refreshing activities in an attempt to manipulate inorganic combinations of advertisements and content. Media Matters' excessive scrolling and refreshing generated between 13 and 15 times more advertisements per hour than would be seen by a typical user, attempting to forcibly generate a pairing of fringe content and paid advertisements by massive repetition unlike anything that any normal user would encounter under typical, or even extraordinary, conditions.

54. Eventually, through intentionally evading X's multiple safeguards by curating the content on its feed and then repeatedly attempting to create pairings of advertisements for major brands with controversial content, Media Matters finally achieved its goal. Accordingly, it took screenshots of posts from IBM, Apple, Bravo, Xfinity, and Oracle that Media Matters engineered to appear adjacent to inflammatory, fringe content.

## IV. To Disparage X, Media Matters Hid Its Manipulation from Readers and Advertisers.

55. Media Matters generated a specific, intended result that was not only inorganic, but exceedingly (and demonstrably) rare, all while taking specific steps to obscure these facts in its

November 29, 2023, article. These deliberate, malicious omissions generated in advertisers and users the false, misleading impression that these types of pairings were common, widespread, and alarming. Media Matters hid its manipulations through omissions, deceptive image selections, misrepresentations, and secrecy settings.

56. Media Matters omitted in its entirety its process of manufacturing these ad pairings. It did not include in its article that it created a user that *only* followed 30 accounts that either belonged to fringe figures or major national brands. Neither readers nor advertisers had any way of knowing that the entire feed was orchestrated to generate the remarkably rare combinations. Media Matters also omitted mentioning in its entirety its excessive scrolling and refreshing, allowing users to believe (falsely) that the "report" was produced under circumstances that were organic and unmanipulated.

57. Media Matters also omitted and made no attempt to truthfully disclose the rarity of these pairings. The representation put forth by Media Matters constituted 0.0000009090909 percent of impressions served on the day in question. Most or all of these pairings were not seen by literally anyone besides Media Matters' own manipulated account, and no authentic user of the platform has been confirmed to have seen any of these pairings.

58. Media Matters' image choice in its smear also functioned to hide the true nature of its report. All images selected contained *only* the ad and the controversial content, with all other posts absent from view. That is, had readers been able to see the posts above and below the pairings, they would have easily gleaned the highly specific nature of the small number of accounts Media Matters chose to follow. Media Matters chose to show *every* pairing in its article using this deceptive technique—hiding its deceit through even more deceit.

59. Tellingly, Media Matters used X's privacy features in order to hide its methodology from its readers. That is, Media Matters set this account to "private," blocking anyone from seeing which accounts Media Matters actually followed, thus disallowing anyone from understanding how its feed was manipulated. Indeed, Media Matters at no point includes images *with any information about the account that was exposed to these images*; the cropped nature of Media Matters' deceptive screenshots leaves its profile picture out of frame.

60. Accordingly, Media Matters created the impression that these pairings were organic, accurate, and representative of the typical X user's experience, which actually and demonstrably misled users and advertisers, causing harm to X Corp.

**V. Media Matters Caused Advertisers to Believe the Pairings Were Organic.**

61. After the publication of Media Matters' false smear on November 16, 2023, advertisers pulled their ads from the site, which, as Media Matters admits, only happened after it reported that X was placing ads alongside white nationalist and pro-Nazi content. Included in these companies, which all referenced antisemitic content in their withdrawal from X, are:

**Comcast.** After Media Matters' November article featured a contrived, misleading, and inflammatory image showing an ad for Xfinity next to a pro-Nazi post, its parent company Comcast decided to pull all ads for Comcast entities from X.

**NBCUniversal.** As the parent company of Bravo and a subsidiary of Comcast, NBCUniversal pulled all advertising from X after publication of the article.

**Apple.** The day after publication of the article, which also featured an Apple ad contrived to be placed next to fringe content, Apple—one of X's largest clients—pulled all of its ads from the platform.

**IBM.** As previously discussed, IBM pulled all ads immediately after the publication of the article.

62. Media Matters' manipulation was so severe that companies not even featured in the article also pulled ads from X. These companies include Lionsgate, Warner Bros. Discovery, Paramount, and Sony.

63. The result of this November 2023 article—the culmination of over a year's worth of disparagement of X Corp. and a long campaign pressuring advertisers to cut ties with the X platform if Media Matters' demands were not met—was severe. As described above, numerous advertisers reduced their advertising spending under ongoing contracts with X Corp. Others suspended or ended their relationships with X Corp. altogether.

64. X Corp. has lost millions of dollars through this forgone advertising and undoubtedly millions more in lost brand equity with its advertisers and user base. These economic harms were directly caused by the November 2023 article, the campaign of disparagement waged against X Corp., or both.

**FIRST CAUSE OF ACTION**

**Tortious Interference with Contract**

65. Plaintiffs re-allege and incorporate by reference the above allegations.

66. At all relevant times, Defendants were aware that X Corp. contracted with various third parties, including, but not limited to Apple, NBCUniversal, Comcast, Bravo, and IBM, to sell ads on the X platform, as clearly demonstrated by the many articles written by Defendants on the topic. Defendants are aware that such businesses are "brand-conscious blue chip companies" who pay to advertise on the X platform.[20]

[20] Gertz, *It's the Antisemitism, Stupid*, *supra*.

67. Defendants intentionally interfered with contracts between X Corp. and its advertisers, including but not limited to Apple, NBCUniversal, Comcast, Bravo, and IBM—all clients with existing advertisement agreements that were casualties of defendants' misrepresentations and ceased advertising on the X platform as a direct result.

68. Defendants also intentionally interfered with contracts between X Corp. and such advertisers by making performance of X's advertisement agreements more burdensome or of less or no value to the businesses entitled to performance under advertising contracts with X Corp.

69. Defendants' own statements and "reporting" demonstrate that they willfully, intentionally, and knowingly interfered with contracts between X Corp. and such advertisers, including but not limited to persuading advertisers to end their relationships with X due to manufactured concerns about advertising safety and antisemitism on the X platform. Upon information and belief, defendants desired to interfere with such contracts or believed that interference was substantially certain to result from their actions.

70. Defendants' campaign to falsely depict the X platform as unsafe for advertisers proximately caused harm to X's revenue from its contracts with such paying advertisers. Defendants' false statements about safety on the X platform and antisemitism were substantial factors in bringing about this harm because they undermined advertisers' faith in X Corp.'s abilities to monitor and curate content.

71. By and through their actions, Defendants have interfered and continue to interfere with existing contractual relationships involving X Corp.

72. X Corp. had existing contractual relationships at all relevant times with corporate advertisers for the sale of advertisements on the X platform. Defendants were aware of those obligations and willfully and intentionally interfered with those contracts by falsely portraying the

X platform as unsafe for advertisers and falsely associating X Corp. and the X platform with antisemitism. Defendants' acts of interference include, but are not limited to, knowingly persuading advertisers to end or suspend advertising on the X platform, knowingly inducing one or more of the contracting parties to breach its obligations, or knowingly making X Corp.'s performance of its advertisement sales more burdensome or of less or no value to the advertisers entitled to performance. Defendants' actions are the proximate cause of X Corp.'s injury. And at a minimum, X Corp. has been and continues to be injured by being stripped of advertising revenue and brand equity and by incurring the significant legal burden of combatting Defendants' wrongful actions toward X Corp.'s contractual obligations. *See, e.g.*, *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 210 (5th Cir. 2020); *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017); *Travelhost, Inc. v. Brady*, No. 3:11-CV-454-M-BK, 2013 WL 4475057, at *5 (N.D. Tex. Aug. 21, 2013).

## SECOND CAUSE OF ACTION

### Business Disparagement

73. X Corp. re-alleges and incorporates by reference the above allegations.

74. Business disparagement is actionable under Texas law if "'(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) resulting in special damages to the plaintiff.'" *Vendever LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *4 (N.D. Tex. Sept. 16, 2011) (quoting *Forbes v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)).

75. Defendants made false and disparaging statements regarding the quality of X Corp.'s product, X, including, but not limited to, that a typical user using the platform in an ordinary manner would receive major advertiser content paired next to fringe content; that X

Corp.'s brand-safety protocols were malfunctioning or otherwise defective; and that X Corp.'s policies were implemented to advance an anti-Semitic or racist agenda.

76. Defendants made these statements as statements of fact, not opinion. Among other statements described above, defendants represented that X "has been placing" advertisements next to anti-Semitic and racist materials. It represented that it "found" these materials next to advertisements. Based on these false representations, defendants also falsely stated that it "certainly isn't the case" that "brands are now 'protected from the risk of being next to' potentially toxic content."

77. Defendants intentionally made these statements with actual malice. Defendants made them either knowing that they were false or without regard to their falsity because they were made as part of an ongoing campaign to inflict economic harm on X Corp. in retaliation for X Corp. not hewing to their preferred policies regarding the X platform. Defendants either subjectively intended to make false statements regarding the "risk" to advertisers or were recklessly indifferent to the truth.

78. Defendants made these false, disparaging, and malicious statements without any legally recognized privilege entitling them to do so. They are responsible for their "'falsehoods concerning the condition or quality of" X Corp.'s "products or services that [were] intended to, and d[id] in fact, cause financial harm.'" *Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *7 (N.D. Tex. Aug. 12, 2021) (quoting *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020)).

79. X Corp. suffered financial harm as a result of these statements. X Corp's special damages—their "'direct, pecuniary loss attributable to the false communications of the defendants,'" *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996) (citing *Hurlbut v.*

*Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 767 (Tex. 1987))—included lost revenue from businesses suspending, reducing, or re-examining their advertising with X Corp. as well as lost brand equity. Defendants' false and disparaging statements about advertising-safety measures on the X platform further inflicted financial harms on X Corp. by undermining advertisers' faith in X Corp.'s abilities to monitor and curate content. Defendants are liable for these losses.

## THIRD CAUSE OF ACTION

### Interference with Prospective Economic Advantage

80. X Corp. re-alleges and incorporates by reference the above allegations.

81. X Corp. was engaged in economic relationships that would have resulted in an economic benefit to X Corp. X Corp. had relationships with advertisers that pulled their spending in the light of defendants' article and had every reason to suspect that these relationships would continue.

82. At all relevant times, defendants knew of these relationships, as they were described in their "reporting."

83. Defendants engaged in wrongful conduct that disrupted X Corp.'s economic relationships. Through extensive deception and misrepresentation, defendants caused advertisers to lose faith in X Corp.'s abilities to monitor and curate content, thereby leading them to break off these lucrative relationships and any future continued relationships.

84. Defendants' false, malicious, and disparaging statements were independently tortious.

85. Defendants acted with the intent to disrupt these relationships. Media Matters' actions continued its expressly declared "guerilla war" on media it dislikes and its systematic, harassing attacks on X Corp.

86. X Corp. was harmed as a result of defendants' actions: it lost advertisers as a result of defendants' interference.

87. Defendants' actions were undoubtedly a substantial factor in causing this harm, with defendants' website even noting that X Corp.'s relationships fell apart *after* Media Matters released its maliciously false piece.

88. As stated above, Defendants' conduct is independently tortious or unlawful. Defendants' conduct described herein is the proximate cause of the ongoing injury to X Corp. because, at a minimum, Defendants knowingly and intentionally took actions to discourage any advertiser from associating with X Corp., which were purposefully designed to interfere with X Corp.'s business opportunities. And X Corp. has been and continues to be injured by, at a minimum, incurring significant burden and expense to combat Defendants' actions in order to maintain its economic and bargaining position with respect to its prospective business relations related to advertisement sales on the X platform and by incurring the significant legal burden of combatting Defendants' wrongful actions. *See, e.g.*, *Moser v. Omnitrition Int'l, Inc.*, No. 3:16-CV-2558-L, 2017 WL 1957084, at *5 (N.D. Tex. Feb. 28, 2017), *report and recommendation adopted sub nom. Moser v. Omnitron Int'l Inc.*, No. 3:16-CV-2558-L, 2017 WL 1957026 (N.D. Tex. May 10, 2017); *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment in its favor and the following relief:

1. Actual and consequential damages caused by defendants' misconduct, including but not limited to all general and special damages;

2. Punitive damages in an amount to be proven at trial;

3. A preliminary and permanent injunction ordering defendants to immediately delete, take down, or otherwise remove the article entitled "As Musk Endorses Antisemitic Conspiracy Theory, X Has Been Placing Ads for Apple, Bravo, IBM, Oracle, and Xfinity Next to Pro-Nazi Content From Its Web," and any other false, malicious, and disparaging articles as may be demonstrated to the Court, from all websites and social media accounts owned, controlled, or operated, directly or indirectly, by defendants;

4. Plaintiffs' costs and attorneys' fees to litigate this action; and

5. For such other and further relief as the Court may deem just and proper.

February 27, 2024

Respectfully submitted.

*/s/ Judd E. Stone II*

Judd E. Stone II
Texas Bar No. 24076720
Christopher D. Hilton
Texas Bar No. 24087727
Ari Cuenin
Texas Bar No. 24078385
**STONE | HILTON PLLC**
1115 W. Slaughter Lane
Austin, TX 78748
Telephone: (737) 465-7248
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com

John C. Sullivan
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

# EXHIBIT 7

PageVault

| | |
|---|---|
| Document title: | Angelo Carusone discusses Elon Musk and X on MSNBC: "No matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been" \| Media Matters for America |
| Capture URL: | https://www.mediamatters.org/angelo-carusone/angelo-carusone-discusses-elon-musk-and-x-msnbc-no-matter-how-you-slice-it-fact |
| Page loaded at (UTC): | Mon, 31 Aug 2026 22:05:18 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 22:05:19 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 8 |
| Capture ID: | sCCjdXN1ZHd5d4YskNM7MH |
| Display Name: | achen |

# Angelo Carusone discusses Elon Musk and X on MSNBC: "No matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been"

WRITTEN BY MEDIA MATTERS STAFF

PUBLISHED 11/26/23 9:13 AM EST




From the November 26, 2023, edition of MSNBC's *The Katie Phang Show*

KATIE PHANG (HOST): Since the richest man in the world bought Twitter – now known as X – over a year ago, Elon Musk has struggled to keep advertisers on the platform. Now, the self-proclaimed free speech absolutist has found someone else to blame. On Monday, Musk sued progressive media watchdog group Media Matters over an investigative report Musk claims is costing him major ad dollars. It's interesting to note that Musk sued in federal court in Texas, despite being headquartered in California and Media Matters being based in Washington, DC; and X's lawyers for this lawsuit? Two former top

Texas, despite being headquartered in California and Media Matters being based in Washington, DC; and X's lawyers for this lawsuit? Two former top lieutenants to Texas AG Ken Paxton, who has launched an investigation into Media Matters, which he calls a radical anti-free speech organization. Let that irony sink in for a second there. The lawsuit comes after Media Matters discovered that ads for major corporations were placed next to posts promoting antisemitic content on Musk's social media platform. Musk alleges that Media Matters investigation was manipulated in order to intentionally hurt X's advertising sales. However, the reality is major companies have suspended advertising on acts including Airbnb, Coca-Cola, Microsoft, Netflix, and MSNBC parent company Comcast. And according to internal documents viewed by The New York Times, excludes as much as $75 million in advertising revenue by the end of this year. Joining me now, Angelo Carusone, president and CEO of Media Matters. Angelo, it's always good to see you. Look, Elon Musk's suit claims that your investigative report, cherry-picked accounts that followed extreme fringe content and major advertisers to get your results. I looked at the lawsuit. Paragraphs seven and ten of the complaint say that you manipulated algorithms and that you endlessly scrolled and refreshed to be able to get what you got. But let's be clear here, Angelo, and I think this is absurd about this lawsuit. It doesn't reject the truth, which is the antisemitic content was next to the ads, right?

ANGELO CARUSONE (MEDIA MATTERS): That's right. And that's really what started this series of reports. We've been writing about this specific topic since August, when as part of the efforts to bring advertisers back to the platform, Linda Yaccarino, who is the CEO, had sort of rolled out or announced

since August, when as part of the efforts to bring advertisers back to the platform, Linda Yaccarino, who is the CEO, had sort of rolled out or announced a series of what they were describing as brand safety protections. So they kind of acknowledged and sort of gave up on the idea that the platform was not going to become a safe haven or an increasing cesspool for extremism, things like pro-Hitler content or pro-Nazi content. But what they actually said to advertisers, don't worry, we have these new mechanisms in place much more robust than they were that will sort of prevent your ads from ever even appearing alongside this stuff. So you don't have to worry. And so these reports and this was just one of many all were illustrating something that was at play here, which is that the tools that they claimed were in place to protect brands were not operating. So that's that's really the core here. You know, we didn't place the ads. We didn't, you know, photoshop in the pictures of the ads. What we did was use Twitter the way a normal user would and then and then log the advertisements that were received. And that's the issue - no matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been.

PHANG: Yeah. Angelo, let's be clear. X's problem with advertisers began long before Media Matters did this report and before this lawsuit as early as this summer. Advertising on that platform was down nearly 60%. Do you think Musk is just using this lawsuit as a scapegoat for his own poor management of his company?

CARUSONE: Yeah, And I think not only the mismanagement in terms of gutting the brand safety and the trust teams, to your point, advertisers have been leaving. A lot of them left very early on before he even really made big changes here because he signaled that he was going to roll back a lot of brand

and the trust teams, to your point, advertisers have been leaving. A lot of them left very early on before he even really made big changes here because he signaled that he was going to roll back a lot of brand safety. So I think that's part of it. And I think the other part we shouldn't forget this is that this lawsuit came and this advertiser exodus came not only on the heels of the report that we put out, but on Elon Musk's own behavior where he wasn't just, you know, engaging with some pretty extreme, you know, antisemitic, great replacement theory. He responded to this notion that, you know, that the thing that people were chanting in Charlottesville, that Jews in America are somehow funding mass immigration in order to dilute white power. He responded to that great replacement theory, claiming the actual truth on his own platform. So if you're an advertiser, you're looking at the increased rise in extremism and toxicity. We're putting out reports showing that they're sharing ad revenue with these Hitler stan accounts, get thousands of dollars of ad revenue. Then Elon Musk does that, then other reports come out showing the juxtaposition of ads next to extreme content. And if you're an advertiser, when you put it all together, you're like the rot goes all the way to the top and they're never going to really be able to put in place the kinds of mechanisms that make it good for business, at least from an advertiser's perspective.

## THE LATEST

**Real America's Voice Noticias guest: "The biggest mistake the United States of America ever made was giving women the right to vote"**

08/31/26 6:45 PM EDT

**Ben Shapiro claims Abdul El-Sayed, Zohran Mamdani,**

the right to vote"

08/31/26 5:45 PM EDT

Ben Shapiro claims Abdul El-Sayed, Zohran Mamdani, Hasan Piker, and Cenk Uygur shouldn't be in the country

08/31/26 2:46 PM EDT

Embracing blatant Islamophobia, CBS News makes bizarre attempt to tie El-Sayed to 9/11

08/31/26 2:38 PM EDT

Megyn Kelly calls Michelle Obama a "steaming heap of nastiness"

08/31/26 1:47 PM EDT

Republican C-Span caller says Trump is "oblivious to the situation most Americans are facing right now."

08/28/26 3:26 PM EDT

## IN THIS ARTICLE



Angelo Carusone



Twitter / X



Elon Musk



Elon Musk

# Related

**On Deadline: White House, Angelo Carusone explains that "the larger right-wing media ecosystem is fully behind" Trump's tariffs on Canada**

08/25/26 6:07 PM EDT

**On MS NOW's The Weeknight, Angelo Carusone discusses how election denialism has gone from the fringes to "Republican orthodoxy"**

08/25/26 12:05 PM EDT

**On Deadline: White House, Angelo Carusone discusses lessons from the Florida primary: "Their media machine and their politics and their apparatus for building and organizing power is adapting, and we have to adapt along with it"**

08/19/26 11:41 AM EDT

MEDIAMATTERS
FOR AMERICA

SIGN UP FOR EMAIL UPDATES

ABOUT
CONTACT
CORRECTIONS
SUBMISSIONS
JOBS
PRIVACY POLICY
TERMS & CONDITIONS



## Related

On Deadline: White House, Angelo Carusone explains that "the larger right-wing media ecosystem is fully behind" Trump's tariffs on Canada

08/25/26 6:07 PM EDT

On MS NOW's The Weeknight, Angelo Carusone discusses how election denialism has gone from the fringes to "Republican orthodoxy"

08/25/26 12:05 PM EDT

On Deadline: White House, Angelo Carusone discusses lessons from the Florida primary: "Their media machine and their politics and their apparatus for building and organizing power is adapting, and we have to adapt along with it"

08/19/26 11:41 AM EDT

MEDIAMATTERS
FOR AMERICA

SIGN UP FOR EMAIL UPDATES

ABOUT
CONTACT
CORRECTIONS
SUBMISSIONS
JOBS
PRIVACY POLICY
TERMS & CONDITIONS

© 2026 Media Matters for America

# EXHIBIT 8

PageVault

| | |
|---|---|
| Document title: | Elon Musk on X: "@alx The first of many" / X |
| Capture URL: | https://x.com/elonmusk/status/1726759570754670667 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:41:47 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:41:48 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | nQHrD1zCH7sVs6yFnWoYvD |
| Display Name: | achen |

← **Post**

Log in Sign up

**ALX** 🇺🇸 @alx · Nov 21, 2023

BREAKING: 𝕏 Corp. has filed a lawsuit against Media Matters



Case 4:23-cv-01175-P Document 1 Filed 11/20/23 Page 1 of 15 PageID 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

X CORP., a Nevada corporation,
Plaintiff,
v.
MEDIA MATTERS FOR AMERICA, a Washington, D.C. non-profit corporation, and ERIC HANANOKI,
Defendants.

Case No. 4:23-cv-1175

JURY TRIAL DEMANDED

COMPLAINT

1. Defendant Media Matters for America ("Media Matters") is a self-proclaimed media watchdog that decided it would not let the truth get in the way of a story it wanted to publish

382 1.9K 12K 1.4M

**Elon Musk**
@elonmusk

The first of many

12:28 AM · Nov 21, 2023 · **276.9K** Views

539 808 7.5K 55

**ALX** 🇺🇸 @alx · Nov 21, 2023

Mood tbh



**See all the replies**

**Continue to X**

← **Post** Log in Sign up

**ALX** @alx · Nov 21, 2023
Mood tbh




48 203 1.2K 43K

**Ian Miles** @ianmiles · Nov 21, 2023
Ruin them.

12 12 300 9.9K

**LIZ CROKIN** @LizCrokin · Nov 21, 2023
Wonderful news! Keep fighting the good fight!

2 21 240 11K

## See all the replies

Continue to X

# EXHIBIT 9

Page Vault

| | |
|---|---|
| Document title: | Democratic Megadonors Bankroll Media Matters, Leaked Donor List Shows |
| Capture URL: | https://freebeacon.com/democrats/democratic-megadonors-bankroll-media-matters-leaked-donor-list-shows/ |
| Page loaded at (UTC): | Mon, 31 Aug 2026 22:10:22 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 22:10:23 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 10 |
| Capture ID: | sRB26eD1V6StAoQdzq1S1w |
| Display Name: | achen |

The WASHINGTON FREE BEACON
COVERING THE ENEMIES OF FREEDOM THE WAY THE MAINSTREAM MEDIA WON'T

DEMOCRATS

# Democratic Megadonors Bankroll Media Matters, Leaked Donor List Shows



Media Matters Founder David Brock (Twitter)

Andrew Kerr
January 4, 2024

Media Matters for America, a progressive activist group that masquerades as a media watchdog, is bankrolled by some of the largest Democratic donors in the country, according to a confidential donor list obtained by the *Washington Free Beacon*.

As a charity, Media Matters is not required to disclose its donors to the public. But the group appears to have mistakenly identified its five larg




Me ber.

appears to have mistakenly identified its five largest contributors in a public filing to the New Mexico Office of the Attorney General in November. Media Matters received $4 million from Indiana-based shopping mall magnate Deborah Simon, who pledged to do everything in her power to defeat former President Donald Trump and has contributed $53 million to Democratic politicians and groups since 2018. The group also received $1.75 million from Bain Capital co-chairman Joshua Bekenstein and his wife, Anita, both of whom are prolific contributors to Democratic super PACs.




The list, which contains a notice that it is "not open for public inspection," also identifies gay rights activist Tim Gill's private foundation as a major contributor to Media Matters. Gill is known for working with Colorado Gov. Jared Polis (D.) to bring "dark money" to the state level in the mid-2000s. Media Matters also disclosed the Stephen Silberstein Foundation and the Susan Thompson Buffett Foundation as major contributors in the list.

Media Matters's donor list is the latest evidence of the so-called watchdog's partisan leanings. Founded in 2004 by Clinton loyalist David Brock

Media Matters's donor list is the latest evidence of the so-called watchdog's partisan leanings. Founded in 2004 by Clinton loyalist David Brock, Media Matters received tax-exempt status after claiming to the IRS it would identify and correct conservative misinformation in the news by presenting a "full and fair exposition of the pertinent facts." The group dropped its objective façade in 2016 when it threw its support behind Hillary Clinton's presidential campaign, according to the *New Republic*. Media Matters also shared an address with American Bridge 21st Century, one of the largest Democratic super PACs in the country.

Despite this, mainstream media outlets frequently downplay or ignore Media Matters's partisan leanings. CNBC and Reuters failed to mention Media Matters's liberal bias in articles as recently as November, instead referring to the group as a media watchdog.

Media Matters raised $16.5 million in 2022, which it used to lavish its top executives with lucrative salaries. Media Matters president Angelo Carusone raked in $406,000 while Brock, who left the charity in November 2022 to launch a dark money group dedicated to defending President Joe Biden, received $270,000 on top of a $189,000 payment from a deferred compensation plan.

Media Matters has focused its efforts in recent years organizing advertising boycotts against Fox News and other conservative media outlets. The

years organizing advertising boycotts against Fox News and other conservative media outlets. The charity also targeted tech billionaire Elon Musk and X, formerly known as Twitter, in November with an article claiming the social media network served ads next to extremist content promoting Adolf Hitler. Media Matters then used its findings to pressure major advertisers such as IBM and Comcast to stop advertising on X.

---

---

But X alleged in a defamation lawsuit in response that Media Matters manipulated its algorithms to produce the results, which it called "manufactured, inorganic, and extraordinarily rare." The story "completely misrepresented the real user experience on X, in another attempt to undermine freedom of speech and mislead advertisers," the social media platform wrote.

freedom of speech and mislead advertisers," the social media platform wrote.

"X Corp will be filing a thermonuclear lawsuit against Media Matters and ALL those who colluded in this fraudulent attack on our company," Musk wrote on Nov. 18. "Their board, their donors, their network of dark money, all of them."

Republican state attorneys general Ken Paxton of Texas and Andrew Bailey of Missouri also launched investigations into Media Matters for engaging in "potential fraudulent activity" surrounding the report.

"We are examining the issue closely to ensure that the public has not been deceived by the schemes of radical left-wing organizations who would like nothing more than to limit freedom by reducing participation in the public square," Paxton said. Carusone, the Media Matters president, said Musk's lawsuit was "meritless."

Media Matters did not respond to a request for comment.

Published under: Dark Money , David Brock , Elon Musk , Media Bias , Media Matters for America , Super PACs

ADVERTISEMENT

# EXHIBIT 10

PageVault

| | |
|---|---|
| Document title: | Vril_Pilled (Changing Consumer Habits) on X: "@KanekoaTheGreat @FreeBeacon Brace yourself for this shocking surprise — they're all "jewish" Democratic megadonors. Fixed it for you." / X |
| Capture URL: | https://x.com/DoomMetalMachi1/status/1743398717716140143 |
| Page loaded at (UTC): | Tue, 01 Sep 2026 22:18:00 GMT |
| Capture timestamp (UTC): | Tue, 01 Sep 2026 22:18:01 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | 4LWLSrJefZaYWpUvixea4P |
| Display Name: | achen |

← **Post** Log in Sign up

**KanekoaTheGreat** @Kanek... · Jan 5, 2024 ···

🚨BREAKING: @FreeBeacon has uncovered a confidential list revealing Media Matters' major contributors.

Brace yourself for this shocking surprise — they're all Democratic megadonors.

- Deborah J. Simon: $4,000,000
- Gill Foundation: $2,970,000
- Josh and Anita Bekenstein: Show more







1.7K 14K 41K 29M

**Vril_Pilled (Changing Consumer Habits)** ···
@DoomMetalMachi1

Brace yourself for this shocking surprise — they're all "jewish" Democratic megadonors.

Fixed it for you.

10:26 PM · Jan 5, 2024 · **254** Views

1 8

**See all the replies**

Continue to X

← **Post** Log in Sign up


** Do Not File **
*** Not Open to Public Inspection ***

| ntributor's Name | Cont |
|---|---|
| | 4,( |
| | 2,: |
| NSTEIN | 1,` |
| OUNDATION | 1,! |
| T FOUNDATION | 1,` |

Bankroll Media Matters, Leaked Donor List Shows



1.7K 14K 41K 29M

**Vril_Pilled (Changing Consumer Habits)**
@DoomMetalMachi1

Brace yourself for this shocking surprise — they're all "jewish" Democratic megadonors.

Fixed it for you.

10:26 PM · Jan 5, 2024 · **254** Views

1 8

✨✨ @678456dfg · Jan 5, 2024
EIN club

30

**See all the replies**

Continue to X

# EXHIBIT 11

Page Vault

| | |
|---|---|
| Document title: | Tom Hennessy on X: "@KanekoaTheGreat @FreeBeacon Lot of Jewish sounding names, sure it's just a cohencidence" / X |
| Capture URL: | https://x.com/Tomhennessey69/status/1743436574719877441 |
| Page loaded at (UTC): | Tue, 01 Sep 2026 22:13:43 GMT |
| Capture timestamp (UTC): | Tue, 01 Sep 2026 22:13:44 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | anQ33MXtuW7veLY6DbTQqe |
| Display Name: | achen |

← **Post** Log in **Sign up**

**KanekoaTheGreat** @Kanek... · Jan 5, 2024 ···

🚨BREAKING: @FreeBeacon has uncovered a confidential list revealing Media Matters' major contributors.

Brace yourself for this shocking surprise — they're all Democratic megadonors.

• Deborah J. Simon: $4,000,000
• Gill Foundation: $2,970,000
• Josh and Anita Bekenstein: Show more




1.7K 14K 41K 29M

**Tom Hennessy** @Tomhennessey69 ···

Lot of Jewish sounding names, sure it's just a cohencidence

12:57 AM · Jan 6, 2024 · **8.2K** Views

12 2 185 1

**Buddy Tucker (Racewarrior...** · Jan 6, 2024 ···
I also noticed that.

## See all the replies

**Continue to X**

← **Post** Log in Sign up

12:57 AM · Jan 6, 2024 · **8.2K** Views

12 2 185 1

**Buddy Tucker (Racewarrior...** · Jan 6, 2024 ···
I also noticed that.

1 11 410

**THE MAGA-BOT 9000™ (she/...** · Jan 6, 2024 ···
Should we stop nooticing?

6 154

**SH7RK TRADER** @city2sb · Jan 6, 2024 ···
Susan T. Buffett Foundation CEO is Allen Greenberg, Warren Buffets x-son in law who divorced his daughter in 1995

2 298

**See all the replies**

Continue to X

# EXHIBIT 12

PageVault

| | |
|---|---|
| Document title: | PHILLIP KIMBY on X: "@KanekoaTheGreat @ScottAdamsSays @FreeBeacon Self-destructing Jews. More modern conveniences..." / X |
| Capture URL: | https://x.com/KimbyPhillip/status/1743728211064696861 |
| Page loaded at (UTC): | Tue, 01 Sep 2026 22:17:03 GMT |
| Capture timestamp (UTC): | Tue, 01 Sep 2026 22:17:05 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | mGfDVxMhUkbfquvuY5hke9 |
| Display Name: | achen |

← **Post** Log in Sign up

**KanekoaTheGreat** @Kanek... · Jan 5, 2024 ···

🚨BREAKING: @FreeBeacon has uncovered a confidential list revealing Media Matters' major contributors.

Brace yourself for this shocking surprise — they're all Democratic megadonors.

• Deborah J. Simon: $4,000,000
• Gill Foundation: $2,970,000
• Josh and Anita Bekenstein: Show more




1.7K 14K 41K 29M

**PHILLIP KIMBY** ···
@KimbyPhillip

Self-destructing Jews. More modern conveniences...

8:16 PM · Jan 6, 2024 · **81** Views

1 1

## Join the conversation

Continue to X

# EXHIBIT 13

Page Vault

| | |
|---|---|
| Document title: | #2 Pencil Fight on X: "@KanekoaTheGreat @elonmusk It's time for trials for treason and crimes against humanity. I want to see the death penalty served on all of them." / X |
| Capture URL: | https://x.com/No2PencilFight/status/1744519839518003329 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 18:24:33 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 18:24:34 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | m9FJwvr1odZiRTSjW25r9V |
| Display Name: | achen |

← **Post** Log in Sign up

**KanekoaTheGreat** @Kanek... · Jan 6, 2024 ···

I appreciate the ongoing exposure of these blatantly deceptive and malicious tactics orchestrated by clearly partisan operations to suppress free speech online.

Discovery should be interesting.

MEDIA MATTERS FOR AMERICA 47-0923508

**Schedule A** — **Identification of Excess Contributions Included on Part II, Line 5** — **2022**

** Do Not File **
*** Not Open to Public Inspection ***

| Contributor's Name | Total Contributions | Excess Contributions |
|---|---|---|
| DEBORAH J SIMON | 4,000,000. | 2,349,733. |
| GILL FOUNDATION | 2,970,006. | 1,319,733. |
| JOSHUA AND ANITA BEKENSTEIN | 1,250,000. | 99,733. |
| STEPHEN SILBERSTEIN FOUNDATION | 1,900,000. | 249,733. |
| SUSAN THOMPSON BUFFETT FOUNDATION | 1,751,199. | 100,932. |

31 214 1.3K 51K

**#2 Pencil Fight**
@No2PencilFight ···

It's time for trials for treason and crimes against humanity. I want to see the death penalty served on all of them.

12:41 AM · Jan 9, 2024 · **14** Views

**Join the conversation**

Continue to X

# EXHIBIT 14

PageVault

| | |
|---|---|
| Document title: | Springblade ☐ ☐ on X: "@elonmusk Tribunals in GITMO to save America!" / X |
| Capture URL: | https://x.com/steveMmattison/status/1743487192272454014 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 18:14:54 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 18:14:55 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | csiYVy419CkEoFko9dPhsd |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk** @elonmusk · Jan 5, 2024 ···

Interesting. 𝕏 will add them as defendants in the lawsuit.

> **KanekoaTheGreat** @Kane... · Jan 5, 2024
>
> 🚨BREAKING: @FreeBeacon has uncovered a confidential list revealing Media Matters' major contributors.
>
> Brace yourself for this shocking surprise — ...







4.1K 21K 103K 26M

**Springblade** 🇺🇸 @steveMmattison ···

Tribunals in GITMO to save America!

4:18 AM · Jan 6, 2024 · **238** Views

3

## Join the conversation

Continue to X

# EXHIBIT 15

PageVault

| | |
|---|---|
| Document title: | Elon Musk on X: "Interesting. ☐ will add them as defendants in the lawsuit." / X |
| Capture URL: | https://x.com/elonmusk/status/1743422098679173291 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 22:13:12 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 22:13:13 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 4 |
| Capture ID: | iZmavk4H8mhpn1ARxkGoSq |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk** @elonmusk

Interesting. 𝕏 will add them as defendants in the lawsuit.

**KanekoaTheGreat** @KanekoaThe... · Jan 5, 2024

🚨BREAKING: @FreeBeacon has uncovered a confidential list revealing Media Matters' major contributors.

Brace yourself for this shocking surprise — they're all ...


RICA

dentification of Excess Contribution
Included on Part II, Line 5

** Do Not File **
*** Not Open to Public Inspection ***

| ntributor's Name | Cont |
| --- | --- |
| | 4,( |
| | 2,! |
| NSTEIN | 1,' |
| OUNDATION | 1,! |
| T FOUNDATION | 1,' |




11:59 PM · Jan 5, 2024 · **26.5M** Views

4.1K 21K 103K 1.7K

**Adam Lowisz X Meet...** · Jan 6, 2024

Elon will win 👏 👏 👏



**See all the replies**

**Continue to X**

← **Post** Log in Sign up




110 233 2.7K 87K

**Jeff** @themarketswork · Jan 6, 2024

How does MediaMatters legally qualify for its 501(c)(3) status given that it's really just a front for Dem activists?

79 154 1.3K 59K

**KanekoaTheGreat** @Kanek... · Jan 6, 2024

I appreciate the ongoing exposure of these blatantly deceptive and malicious tactics orchestrated by clearly partisan operations to suppress free speech online.

Discovery should be interesting.



MEDIA MATTERS FOR AMERICA 47-C928000

Schedule A — Identification of Excess Contributions Included on Part II, Line 6 — 2022

** Do Not File **
*** Not Open to Public Inspection ***

| Contributor's Name | Total Contributions | Excess Contributions |
|---|---|---|
| DEBORAH J SIMON | 4,050,000. | 2,349,733. |
| GILL FOUNDATION | 2,970,000. | 1,119,733. |
| JOSHUA AND ANITA BEKENSTEIN | 1,750,000. | 99,733. |
| STEPHEN SILBERSTEIN FOUNDATION | 1,900,000. | 249,733. |
| SUSAN THOMPSON BUFFETT FOUNDATION | 1,751,199. | 100,933. |

31 214 1.3K 51K

## See all the replies

Continue to X

← **Post** Log in Sign up

110 233 2.7K 87K



**Jeff** @themarketswork · Jan 6, 2024 ···

How does MediaMatters legally qualify for its 501(c)(3) status given that it's really just a front for Dem activists?

79 154 1.3K 59K



**KanekoaTheGreat** @Kanek... · Jan 6, 2024 ···

I appreciate the ongoing exposure of these blatantly deceptive and malicious tactics orchestrated by clearly partisan operations to suppress free speech online.

Discovery should be interesting.

MEDIA MATTERS FOR AMERICA 47-0928900

Schedule A — Identification of Excess Contributions Included on Part II, Line 5 — 2022

** Do Not File **
*** Not Open to Public Inspection ***

| Contributor's Name | Total Contributions | Excess Contributions |
|---|---|---|
| DEBORAH J SIMON | 4,000,000. | 2,249,733. |
| GILL FOUNDATION | 2,970,000. | 1,119,733. |
| JOSHUA AND ANITA BEKENSTEIN | 1,950,000. | 99,733. |
| STEPHEN SILBERSTEIN FOUNDATION | 1,990,000. | 249,733. |
| SUSAN THOMPSON BUFFETT FOUNDATION | 1,751,399. | 200,913. |

31 214 1.3K 51K

## See all the replies

Continue to X

# EXHIBIT 16

PageVault

| | |
|---|---|
| Document title: | Diver 41 (Expose Them) on X: "@elonmusk Media Mattered" / X |
| Capture URL: | https://x.com/ExposeDarkDeeds/status/1743422961426563449 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:44:49 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:44:51 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 4 |
| Capture ID: | vjoV8YNU88Qm71GvGig5nB |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk** @elonmusk · Jan 5, 2024

Interesting. 𝕏 will add them as defendants in the lawsuit.

> **KanekoaTheGreat** @Kane... · Jan 5, 2024
>
> 🚨BREAKING: @FreeBeacon has uncovered a confidential list revealing Media Matters' major contributors.
>
> Brace yourself for this shocking surprise — ...




4.1K 21K 103K 26M

**Diver 41 (Expose Them)**
@ExposeDarkDeeds

Media Mattered




**See all the replies**

**Continue to X**

← **Post** Log in Sign up



12:03 AM · Jan 6, 2024 · **15.5K** Views

13 21 380 2

**Trump is a PEDO** ⚖️ @Trum... · Jan 6, 2024 ···
Threatening violence?

1 42

**Happy Floridian** 🌞🏝️🐋 @Ha... · Jan 6, 2024 ···
🤣🤣🤣🤣🤣🤣🤣🤣 epic

1 34

**Jan** @Jan15813925 · Jan 6, 2024 ···
Yes absolutely blow it up 😉

1 38

**See all the replies**

Continue to X

← **Post** Log in Sign up



12:03 AM · Jan 6, 2024 · **15.5K** Views

13 21 380 2

**Trump is a PEDO** @Trum... · Jan 6, 2024 ···
Threatening violence?

1 42

**Happy Floridian** 🌞🏝️🐋 @Ha... · Jan 6, 2024 ···
😂😂😂😂😂😂😂😂 epic

1 34

**Jan** @Jan15813925 · Jan 6, 2024 ···
Yes absolutely blow it up 🤩

1 38

**See all the replies**

Continue to X

# EXHIBIT 17

Page Vault

| | |
|---|---|
| Document title: | Elon Musk on X: "Media Matters is pure evil" / X |
| Capture URL: | https://x.com/elonmusk/status/1726660773286748561 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:46:42 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:46:43 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 4 |
| Capture ID: | jVyJYtoqQLhyu7wGKyRmLw |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk** @elonmusk

Media Matters is pure evil

> **Glenn Greenwald** @ggreenwald · Nov 20, 2023
> I think sometimes people forget that Media Matters was created, shaped and governed for a long time by David Brock, arguably the single most craven, deceitful and amoral scumbag DC politics has ever seen.
> ...

5:56 PM · Nov 20, 2023 · **21.1M** Views

5.4K 22K 135K 1.1K

**Michael Shellenber...** · Nov 20, 2023
We tried to replicate the research done by @mmfa and couldn't.

We asked @mmfa to respond to our email requesting more information about their research methodology and it did not respond.

> **Michael Shellenberger** · Nov 20, 2023
> The media say X is placing Apple, IBM, and other ads near pro-Nazi content, but it's not. We tried various ways to replicate Media Matters' research and couldn't. The real goal of Media Matters isn't to fight antisemitism. It's to destr...
>
> **PUBLIC**
>
> Democrats' Need To Censor And Spread Disinformation Behind Media War On Elon Musk's

**See all the replies**

**Continue to X**

← **Post** Log in Sign up



63 318 1.4K 143K

**Mitt🧤Romney is a Holog...** · Nov 20, 2023 ···

Here is one that you didn't know .@elonmusk

David Brock was the Boyfriend of James Alefantis, owner of Comet Ping Pong Pizza, yes the Pizzagate restaurant. Alefantis, a pizza shop owner at that time, was on GQ's 50 Most Powerful People in DC list.🤷🏾‍♂️

88 223 1.3K 123K

**Clandestine** @WarCla... · Nov 20, 2023 ···

Destroy this scum. They have been waging war on us for far too long.






**See all the replies**

**Continue to X**

← **Post** Log in Sign up

**Mitt🧤Romney is a Holog...** · Nov 20, 2023 ···
Here is one that you didn't know .@elonmusk

David Brock was the Boyfriend of James Alefantis, owner of Comet Ping Pong Pizza, yes the Pizzagate restaurant. Alefantis, a pizza shop owner at that time, was on GQ's 50 Most Powerful People in DC list.🤷🏾‍♂️

88 223 1.3K 123K

**Clandestine** @WarCla... · Nov 20, 2023 ···
Destroy this scum. They have been waging war on us for far too long.




18 74 647 26K

**See all the replies**

Continue to X

# EXHIBIT 18

PageVault

| | |
|---|---|
| Document title: | Elon Musk on X: ""Media Matters" is evil incarnate" / X |
| Capture URL: | https://x.com/elonmusk/status/1852011217037979981 |
| Page loaded at (UTC): | Mon, 31 Aug 2026 21:47:47 GMT |
| Capture timestamp (UTC): | Mon, 31 Aug 2026 21:47:48 GMT |
| Capture tool: | 11.3.7 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) @page-vault/browser/11.3.7 Chrome/148.0.7778.280 Safari/537.36 |
| Operating system: | Linux (Node 24.18.1) |
| PDF length: | 3 |
| Capture ID: | pBcv5kutBC3G5jbPVdJbXW |
| Display Name: | achen |

← **Post** Log in Sign up

**Elon Musk** @elonmusk

"Media Matters" is evil incarnate

**Autism Capital** @AutismCap... · Oct 31, 2024

🚨NEW: The New York Times conservative hit piece just dropped. The NYT and Media Matters attempt to pressure Google (YouTube) to remove 30 voices: Rudy Giuliani, Tucker Carlson, Ben Shapiro, Kash Patel, Benny Johnson, Mike Davis, Ted Cruz, RFK Jr., and ...




3:34 PM · Oct 31, 2024 · **11.1M** Views

4.1K 18K 78K 1.6K

**Juanita Broaddrick** @at... · Oct 31, 2024

What decade did Legacy media become dishonest? Has it been my whole life? I always thought David Brinkley and David Huntley were honest. Was I wrong?

## See all the replies

Continue to X

← **Post** Log in Sign up

**Sassafrass84** @Sassafr... · Oct 31, 2024 ···
All right leaning..imagine that?!




17 86 406 7K

**Gunther Eagleman™** @... · Oct 31, 2024 ···
Media Matters is TRASH!

16 26 354 11K

**See all the replies**

Continue to X

# EXHIBIT 19

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

| | | |
|---|---|---|
| X CORP., a Nevada corporation,<br>*Plaintiff*<br>v.<br>MEDIA MATTERS FOR AMERICA, a Washington, D.C. non-profit corporation., et al.<br>*Defendant* | ) ) ) ) ) ) | Civil Action No. 4:23-cv-01175-O |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: The Bonner Group, Inc c/o registered agent: National Registered Agents, Inc
1717 N. St., Ste 1, Washington, DC 20036

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place: Same Day Process<br>1413 K St NW 7th Floor<br>Washington, DC 20005 | Date and Time:<br>08/07/2026 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 07/24/2026

*CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*

OR

/s/ Christopher D. Hilton

*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* X Corp., who issues or requests this subpoena, are:

Christopher D. Hilton and Elizabeth Brown Fore, Stone Hilton PLLC, 600 Congress Ave., Suite 2350, Austin, TX 78701
Phone: 737.465.3897 chris@stonehilton.com and elizabeth@stonehilton.com

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 4:23-cv-01175-O

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ____________ .

My fees are $ ________ for travel and $ ________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ____________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

**Exhibit A**

In reading and interpreting these requests for production and the accompanying instructions, the following definitions apply:

**DEFINITIONS**

1. "X" or "Plaintiff" shall mean the Plaintiff in this Matter, X Corp., as well as its predecessor in interest, Twitter, Inc.

2. "Defendants" means the Defendants in this Matter, Media Matters for America (also referred to as "Media Matters"), Eric Hananoki (also referred to as "Hananoki"), and Angelo Carusone (also referred to as "Carusone"), either conjunctively or disjunctively as needed to bring within the scope of these requests any materials that might otherwise be excluded from their scope. "Defendants" also refers to, as applicable, each member of Defendant's board of directors ("Board"), parents, subsidiaries, affiliates, predecessor entities, employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of any Defendant, as well as all persons who have acted or purport to have acted on any Defendant's behalf.

3. "You" or "Your" shall refer to The Bonner Group and its Board, parents, subsidiaries, affiliates, predecessor entities, employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of the entity, as well as all persons who have acted or purport to have acted on the entity's behalf.

4. "X's advertisers" shall mean any company which advertised on the Platform, including, but not limited to, IBM, Intel, AT&T, Apple, Coca-Cola, Dropbox, ESPN, Comcast (including, but not limited to, the following direct or indirect subsidiaries, affiliates, branches, divisions, offices, or units – NBCUniversal, Peacock, Universal Theatrical, and Focus Features), National Basketball Association, Warner Bros. Discovery, Inc., GE Aerospace, The Walt Disney Company, American Airlines, Southwest Airlines, and their respective Board, parents,

subsidiaries, affiliates, predecessor entities, employees, agents, attorneys, representatives, and all other persons acting or purporting to act on behalf of the entity, as well as all persons who have acted or purport to have acted on the entity's behalf.

5. The "Platform" shall refer to the social media website x.com and twitter.com, and the X app and Twitter app, and shall include, but not be limited to, the website's or app's features, functions, users, and content.

6. The "Articles" shall refer to the following, including all drafts, outlines, or notes thereof and any subsequent edits, updates, and/or amendments thereto: the November 16, 2023 article written by Eric Hananoki and originally published on November 16, 2023, at or around 10:05 AM EST, titled "As Musk endorses antisemitic conspiracy theory, X has been placing ads for Apple, Bravo, IBM, Oracle, and Xfinity next to pro-Nazi content," available as of February 4, 2024 at https://www.mediamatters.org/twitter/musk-endorses-antisemitic-conspiracy-theory-x-has-been-placing-ads-apple-bravo-ibm-oracle; the November 17, 2023 article written by Eric Hananoki and originally published on November 17, 2023, at or around 12:16 PM EST, titled "X is placing ads for Amazon, NBA Mexico, NBCUniversal, and others next to content with white nationalist hashtags" available at https://www.mediamatters.org/twitter/x-placing-ads-amazon-nba-mexico-nbcuniversal-and-others-next-content-white-nationalist; and Angelo Carusone's appearance and interview on the November 26, 2023, edition of MSNBC's *The Katie Phang Show*, transcription available at https://www.mediamatters.org/angelo-carusone/angelo-carusone-discusses-elon-musk-and-x-msnbc-no-matter-how-you-slice-it-fact, titled "Angelo Carusone discusses Elon Musk and X on MSNBC: 'No matter how you slice it, the fact is their brand safety tools were not operating in the way that they claim they should have been'" available as of November 26, 2023.

7. The "Website" shall refer to the Media Matters for America website and all of its pages, available at https://www.mediamatters.org/.

8. "Matter" shall refer to this above-captioned litigation, *X Corp. v. Media Matters for America et al.*, No. 4:23-cv-01175-O and *Media Matters for America v. X Corp. et al.*, No. 3:25-cv-02397-VC, Northern District of California.

9. "Material," "document," "information," "data," and any similar words describing categories of things that may be subject to production in response to these requests, shall be given the broadest possible interpretation provided by law, including, but not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. Each of these words shall also include without limitation handwritten notes, data in specialized databases or document repositories, and data or information received from journalistic sources. Each of these words shall also include without limitation any "communications" (regardless of whether "communications" is separately specified), meaning any transmission of any information via any means whatsoever, including without limitation emails, phone logs, voicemails, text messages, chat messages (such as Zoom, Slack, Microsoft Teams, or Google Meet), Signal messages, WhatsApp messages, notes of conversations, or recordings of conversations.

10. "Concerning," "regarding," "related to," and any similar phrases signify any connection, direct or indirect, between the requested material and the stated topic. Such phrases describing the subject matter of a request shall be given the broadest possible interpretation to bring within the scope of these requests any materials that might otherwise be excluded from their scope.

11. "Identify," or a request for an "identity," when used with respect to an individual or an entity, means to provide the name of the individual or entity, the current street address for the individual or the main office of such entity (or, if such information is unavailable, any available information or data regarding the individual or entity's location), the telephone number and email address for the individual or entity, and the name and title of the individual responsible for operations of any entity.

12. "Advocacy Campaigns" shall refer to any organization, coalition, or other initiative, including its Board, parents, subsidiaries, affiliates, predecessor entities, employees, agents, attorneys, representatives, volunteers and all other persons acting or purporting to act on behalf of the entity, as well as all persons who have acted or purport to have acted on the entity's behalf, with an objective or goal to influence the conduct, policies, decisions, or profitability of X or the Platform, such as Stop Toxic Twitter and Stop the Deal.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All documents and communications that concern any of the following: (a) boycotting the Platform; (b) outreach or communications targeted at X's advertisers (or potential advertisers) regarding the Platform; (c) building, coordinating, or participating in any public pressure campaign relating to content moderation on the Platform or aimed at reducing or discouraging advertising on the Platform; or (d) the goals, objectives, strategies, or plans of The Bonner Group or Media Matters concerning any of the matters described in subparagraphs (a) through (c) above.

**REQUEST FOR PRODUCTION NO. 2:** Documents sufficient to show any events, trainings, videos, conferences, or webinars hosted or circulated by You, Defendants, Media Matters Action Network, or Unbendable Media LLC concerning (a) X, (b) Elon Musk, (c) the Articles, (d) the Matter, or (e) misinformation, content moderation, ad adjacencies, brand safety, or advertising on the Platform.

**REQUEST FOR PRODUCTION NO. 3:** All documents concerning (a) X, (b) Elon Musk, (c) the Articles, (d) the Matter, or (e) misinformation, content moderation, ad adjacencies, brand safety, or advertising on the Platform.

**REQUEST FOR PRODUCTION NO. 4:** All documents and communications concerning any request, solicitation, requirement, or condition (whether formal or informal) that obligates or encourages Defendants to organize, conduct, or participate in: (a) efforts to boycott the Platform or to encourage others, including its advertisers to do so, (b) public pressure campaigns relating to content moderation, ad adjacencies, brand safety, or advertising on the Platform, or (c) efforts aimed at reducing or discouraging advertising on the Platform. This includes any such requests or conditions contained in grant agreements, donation agreements, funding proposals, or similar instruments.

**REQUEST FOR PRODUCTION NO. 5:** Documents sufficient to show the performance, reach, engagement, distribution, or fundraising impact of articles, media appearances, other editorial content, research, or studies published by Defendants concerning X, (b) Elon Musk, (c) the Articles, (d) the Matter, or (e) misinformation, content moderation, ad adjacencies, brand safety, or advertising on the Platform.

**REQUEST FOR PRODUCTION NO. 6:** All documents and communications concerning inquiries received, solicitations made, and grants or donations tracked or reported by The Bonner Group in connection with (i) the Articles, (ii) the Matter, or (iii) any articles, appearances, other editorial content, research, or studies published by Defendants concerning (a) X, (b) Elon Musk, or (c) misinformation, content moderation, ad adjacencies, brand safety, or advertising on the Platform.

**REQUEST FOR PRODUCTION NO. 7:** All documents and communications concerning reports, updates, certifications, or accounting provided by or on behalf of Defendants to any funder,

donor, or intermediary in connection with (i) the Articles, (ii) the Matter, or (iii) any articles, appearances, other editorial content, research, or studies published by Defendants concerning (a) X, (b) Elon Musk, or (c) misinformation, content moderation, ad adjacencies, brand safety, or advertising on the Platform.

**REQUEST FOR PRODUCTION NO. 8:** All contracts, statements of work, or other agreements governing Your engagement or affiliation with Defendants or Media Matters Action Network.

**REQUEST FOR PRODUCTION NO. 9:** Documents sufficient to show the formation, bylaws, charter, mission, and organizational structure of The Bonner Group, and affiliation with Defendants and Media Matters Action Network.

**REQUEST FOR PRODUCTION NO. 10:** Documents sufficient to identify and describe the roles of Your employees, contractors, board members, or volunteers who provided services or otherwise acted on behalf of Defendants, or Media Matters Action Network.

**REQUEST FOR PRODUCTION NO. 11:** Documents sufficient to identify all costs, facilities, vendors, or other resources shared between You and Defendants or Media Matters Action Network.

**REQUEST FOR PRODUCTION NO. 12:** Documents sufficient to show the total number of Media Matters' donors or grantors who at the time of donation or grant award were either: (a) individuals residing in the Northern District of Texas, or (b) entities, including without limitation corporations, partnerships, associations or other organizations or entities, with a principal place of business, registered office or mailing address in the Northern District of Texas. This request does not seek the name or other personally identifiable information of the donor.

**REQUEST FOR PRODUCTION NO. 13:** All Documents concerning Advocacy Campaigns and efforts to aid, participate in, or otherwise support Advocacy Campaigns.

# EXHIBIT 20

| | |
|---|---|
| **From:** | Caroline Merideth <caroline@stonehilton.com> |
| **Sent:** | Wednesday, September 9, 2026 6:25 PM |
| **To:** | Jackson Erpenbach; Chris Hilton; Elizabeth Brown Fore |
| **Cc:** | Michael Abrams; Rosie Luna; Amy Jeffress; John Quinn; Rachel Freeh |
| **Subject:** | RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group |

This email was sent from outside the Firm.

Hi
Jackson,
We agree to extend the American Independent Foundation's deadline to respond to X's subpoena to September 18.

We think it is premature to meet and confer regarding withdrawal or modification of the subpoenas before we have had an opportunity to review the Bonner Group, Deborah J. Simon Foundation, and the American Independent Foundation's objections. If there is another issue you would like to discuss, please let us know and we will schedule a time to meet and confer next week.

**Caroline Merideth**
Partner
STONE|HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, Texas 78701
caroline@stonehilton.com
(310) 880-8580

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Tuesday, September 8, 2026 8:38 PM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Hi Caroline,

Our position is that the subpoenas served on all three of our clients—the Bonner Group, Deborah Simon, and the American Independent Foundation—should be withdrawn in their entirety at this time. We therefore propose, as stated in our earlier emails from September 2 and this afternoon, that X Corp. withdraw the subpoenas to the Bonner Group, Ms. Simon, and the American Independent pending the Fifth Circuit's decision, with the understanding that X Corp. may consider narrower, more appropriately tailored versions of the subpoenas later on, depending on the outcome of that ruling.

It would be useful to meet and confer about that proposal before we finalize our responses. We are happy to discuss this week or next, and can be flexible to accommodate to your schedule. Alternatively, if you would like to tell us your position on our proposal via email, that would also be helpful.

Thanks,
Jackson

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** Caroline Merideth <caroline@stonehilton.com>
**Sent:** Tuesday, September 8, 2026 1:51 PM
**To:** Jackson Erpenbach <jerpenbach@heckerfink.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

This email was sent from outside the Firm.

Hi Jackson,
We believe it would be more efficient for all parties to meet and confer after the Bonner Group and Deborah Simon have had the opportunity to serve their objections.

The September 18 deadline will remain in place as agreed. We are available to meet and confer the following week, on September 22 or 23, and are happy to work around your schedule on either day.

Thanks,
Caroline

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Tuesday, September 8, 2026 11:37 AM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Hi Caroline,

Thank you for letting us know and for confirming that the subpoena response dates for both the Bonner Group and Deborah Simon have been extended to September 18. Please let us know what times you are available on Tuesday and Wednesday next week and we can identify a time we would be available to discuss.

Best,
Jackson

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** Caroline Merideth <caroline@stonehilton.com>
**Sent:** Monday, September 7, 2026 12:49 PM
**To:** Jackson Erpenbach <jerpenbach@heckerfink.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

This email was sent from outside the Firm.

Hi Jackson,
We have a scheduling conflict that came up this coming Wednesday. We are available to meet Tuesday or Wednesday the week of September 14th and agree to extend the response deadlines for both subpoenas to September 18 to accommodate the discussion.

Thanks,
Caroline

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Friday, September 4, 2026 12:20 PM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Hi Caroline,

We can meet and confer from 10:30 to 11:30am CT on Wednesday, September 9. We would propose that we first discuss the subpoena to the Bonner Group and then discuss the subpoena to Deborah Simon. Would you be able to share a dial-in to include the right people on your team? From our team, please circulate to Amy, Rachel, and myself.

Hope you all have a great Labor Day Weekend!

Thanks,
Jackson

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Friday, September 4, 2026 11:28 AM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Thank you for confirming, Caroline. We will get back to you with our availability for the times you proposed to meet and confer.

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** Caroline Merideth <caroline@stonehilton.com>
**Sent:** Friday, September 4, 2026 11:25 AM
**To:** Jackson Erpenbach <jerpenbach@heckerfink.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

This email was sent from outside the Firm.

Hi Jackson,
Yes, we agree to extend Deborah Simon's deadline to respond to X Corp.'s subpoena to next Friday, September 11.
Thanks,
Caroline

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Friday, September 4, 2026 10:10 AM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Thanks, Caroline. Could you also confirm that Friday, September 11, is Deborah Simon's new deadline to respond to X Corp.'s subpoena?

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** Caroline Merideth <caroline@stonehilton.com>
**Sent:** Friday, September 4, 2026 11:07 AM
**To:** Jackson Erpenbach <jerpenbach@heckerfink.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

This email was sent from outside the Firm.

Hi Jackson,
Yes, we agree to extend the Bonner Group's deadline to respond to X Corp.'s subpoena to next Friday, September 11.
Thanks,
Caroline

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Friday, September 4, 2026 10:05 AM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Thanks, Caroline. Today is the response date for the subpoena, which is what we wanted to discuss with you. Would you be willing to extend that deadline by a week to next Friday? And would you provide the same extension for the subpoena to Deborah Simon, who we also represent?

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** Caroline Merideth <caroline@stonehilton.com>
**Sent:** Friday, September 4, 2026 10:39 AM
**To:** Jackson Erpenbach <jerpenbach@heckerfink.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

You don't often get email from caroline@stonehilton.com. Learn why this is important

This email was sent from outside the Firm.

Hi Jackson,

We would like to discuss your proposal. We're available next Wednesday or Thursday of next week, 10-12 CT, or 2-3CT.
Thanks,
Caroline

**From:** Jackson Erpenbach <jerpenbach@heckerfink.com>
**Sent:** Wednesday, September 2, 2026 4:00 PM
**To:** Caroline Merideth <caroline@stonehilton.com>; Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>
**Cc:** Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; John Quinn <jquinn@heckerfink.com>; Rachel Freeh <rfreeh@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Chris, Elizabeth, and Caroline,

We write ahead of the Bonner Group's deadline to respond to X Corp.'s subpoena. Our position is that the subpoena violates the Bonner Group's First Amendment privilege and that the discovery requested should not be obtained before the Fifth Circuit issues a decision on X Corp.'s requests for donor-related information from Media Matters. We propose that X Corp. withdraw its subpoena to the Bonner Group pending the Fifth Circuit's decision. If after that ruling there are proper requests for non-party discovery from Bonner Group that are consistent with that ruling, avoid duplication of discovery that X Corp. may receive from Media Matters, and protect the Bonner Group's First Amendment privilege, then X Corp. could consider a new, more tailored subpoena accordingly.

Please let us know by Friday morning, September 4, if you agree with our proposal. If you would like to discuss, please identify times that you would be available.

Thanks,

Jackson

**Jackson Erpenbach | Hecker Fink LLP**
Senior Associate
1050 K Street NW | 10th Floor
Washington, DC 20001
(W) 202.796.1870 | (M) 917.439.4876
jerpenbach@heckerfink.com

**From:** John Quinn <jquinn@heckerfink.com>
**Sent:** Thursday, August 6, 2026 10:32 AM
**To:** Caroline Merideth <caroline@stonehilton.com>
**Cc:** Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>; Amy Jeffress <ajeffress@heckerfink.com>; Jackson Erpenbach <jerpenbach@heckerfink.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

Thanks Caroline – agreed. We'll let you know if any questions arise in advance of 9/4. Thanks, and enjoy your August!

**John Quinn | Hecker Fink LLP**
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 212.763.0886 | (M) 610.952.4726
jquinn@heckerfink.com

**From:** Caroline Merideth <caroline@stonehilton.com>
**Sent:** Wednesday, August 5, 2026 6:26 PM
**To:** John Quinn <jquinn@heckerfink.com>
**Cc:** Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <Elizabeth@stonehilton.com>; Michael Abrams <michael@stonehilton.com>; Rosie Luna <rosie@stonehilton.com>
**Subject:** RE: X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

You don't often get email from caroline@stonehilton.com. Learn why this is important

This email was sent from outside the Firm.

Hi John,
Thank you for reaching out. We can agree to extend the Bonner Group's deadline to respond to X Corp.'s subpoena to September 4. We remain available to confer with you should you have any questions regarding the scope of the subpoena.

Thanks,
Caroline
**Caroline Merideth**
Partner
STONE|HILTON PLLC
600 Congress Ave., Ste. 2350
Austin, Texas 78701
caroline@stonehilton.com
(310) 880-8580

**From:** John Quinn <jquinn@heckerfink.com>
**Sent:** Wednesday, August 5, 2026 5:09 PM
**To:** Chris Hilton <chris@stonehilton.com>; Elizabeth Brown Fore <elizabeth@stonehilton.com>
**Cc:** Amy Jeffress <ajeffress@heckerfink.com>; Jackson Erpenbach <jerpenbach@heckerfink.com>
**Subject:** X Corp. v. Media Matters, No. 4:23-cv-01175-O: July 24 Subpoena to The Bonner Group

**IRONSCALES couldn't recognize this email as this is the first time you received an email from this sender jquinn@heckerfink.com**

Hi Christopher and Elizabeth—

Our firm has just been engaged by the Bonner Group in connection with the above-referenced subpoena. I don't believe we've met, but I look forward to working with you both on this. I've also copied my partner Amy Jeffress and our colleague Jackson Erpenbach, who I'm sure share those sentiments.

We're working to get our arms around the case and the requests in your subpoena. We write to request an extension of the August 7 return date, to give us time to come up to speed, analyze your requests, and confer with our client and with you. (I am also just coming off a multi-week trial in Delaware and coming back up to speed on a few fronts, including catching up on sleep!)

Could we agree to a date shortly after Labor Day—say, September 11?

Happy to hop on a call to discuss if that'd be helpful.

Thanks,
John

**John Quinn | Hecker Fink LLP**
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 212.763.0886 | (M) 610.952.4726
jquinn@heckerfink.com

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

**John Quinn | Hecker Fink LLP**
350 Fifth Avenue | 63rd Floor
New York, NY 10118
(W) 212.763.0886 | (M) 610.952.4726
jquinn@heckerfink.com

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you*

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you.*

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you*

---

*This email and its attachments may contain information that is confidential and/or protected from disclosure by the attorney-client, work product or other applicable legal privilege. If you are not the intended recipient of the email, please be aware that any unauthorized review, use, disclosure dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please notify the sender immediately and destroy all copies of the message from your computer system. Thank you*